667 A.2d 898

**PRINCE GEORGE'S COUNTY, Maryland**

v.

**Anthony Wilfred VIEIRA.**

**No. 128, Sept. Term, 1994.**

Court of Appeals of Maryland.

Nov. 29, 1995.

Paul M. Mayhew, Associate County Attorney, (Michael P. Whalen, County Attorney; Sean D. Wallace, Principal Associ-

ate County Attorney, all on brief), Upper Marlboro, for Petitioner.

Richard A. Finci (Houlon & Berman, on brief), New Carrollton, for Respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

BELL, Judge.

At issue in this case is the meaning of Maryland Code (1957, 1992 Repl.Vol., 1994 Cum.Supp.), Art. 27, § 297(d)(2)(i). More particularly, we are asked to determine whether the reference in that subsection to "show cause order" is to a proposed order or one actually executed by a judge. Contrary to the ruling of the Circuit Court for Prince George's County, the Court of Special Appeals held that it was the latter. *Vieira v. Prince George's County*, 101 Md.App. 220, 645 A.2d 639 (1995). Aggrieved, Prince George's County, the petitioner, sought review of that decision by this Court. Recognizing the importance of the issue, we granted its petition for writ of certiorari. We now affirm the judgment of the intermediate appellate court.

## I.

Anthony Wilfred Vieira, the respondent, was stopped by the Prince George's County police for running a red light on Maryland Route 197 at the Baltimore–Washington Parkway overpass. He was arrested when the officer seized drug paraphernalia he observed in the respondent's car. A search of the car uncovered additional paraphernalia and $7,850.00 in cash, which also were seized. The respondent entered a guilty plea to a charge of possession of drug paraphernalia. Pursuant to a plea agreement, he was placed on probation before judgment pursuant to Article 27, § 641.

Eighty-nine days after the respondent was sentenced, on June 3, 1992, the petitioner filed in the Circuit Court for Prince George's County, a Complaint For Forfeiture of Cur-

rency. The complaint consisted of four pages. Although the pages of the complaint are numbered three through six, the June 3 docket entry designates the complaint's page numbers as one through four. On the fourth page, separately captioned, is an affidavit by the County Director of Finance. The next docket entry is dated June 18, 1992, 15 days after the first entry. It states, "show cause order (Graydon McKee, III), F.D. CC given to the Atty for service. BJB." The show cause order referred to in the docket entry consists of two pages and is dated June 17, 1992, 103 days after the final disposition of the respondent's criminal case.[1] Although on the second page of that order is the number "2", the docket entry reflects that the pages of the document are "5–6."

The respondent was served with the complaint and affidavit and a show cause order on October 16, 1992.[2] Having timely filed an answer to the complaint, the respondent subsequently filed "Defendant's Motion (Petition) for Return of Seized Currency," with Memorandum in Support of the Motion, on December 9, 1992. Although he requested a hearing, the motion was denied without one, as was his motion for reconsideration. Following a trial on the merits, the circuit court ordered the currency forfeited to the petitioner. The respondent thereupon noted his appeal to the Court of Special Appeals, which, as we have seen, reversed the circuit court judgment.

## II.

The Court of Special Appeals held that, and we granted certiorari to determine whether, the Legislature intended the forfeiture petition for money or currency, to include the

---

1. Maryland Code (1957, 1992 Repl.Vol.1994 Cum.Supp.), Art. 27, § 297(a)(4) defines "final disposition" to include "the imposition of probation under § 641 of this article."

2. The respondent was not served pursuant to the first show cause order. Consequently, a second attempt at service was made, necessitating the execution of a second show cause order, which also resulted in a lack of service. He was finally served pursuant to a third show cause order.

filing of an executed show cause order, as opposed to a proposed one, along with the complaint and affidavit, within ninety days of the date of final disposition of the criminal proceeding.[3] The petitioner recognizes that § 297(d)(2)(i) requires that "the applications [for forfeiture of money or currency contraband] shall be by complaint, affidavit and show cause order." It argues, however, that, in light of the plain meaning of the statute and the fact that the complaint and the affidavit provide a basis on which a judge would execute a show cause order, the Legislature intended that a proposed, not an executed, show cause order, be filed with the complaint and the affidavit.

The petitioner also argues that the proposed show cause order will not be executed until and unless the judge is satisfied that the complaint and affidavit make a *prima facie* case for forfeiture and signs the proposed order. This is so, it suggests, because an application for forfeiture of money or currency is "an application for judicial decree that would approve or disapprove the seizure and grant or deny the forfeiture." (Quoting *Bozman v. Office of Finance of Baltimore County*, 296 Md. 492, 499, 463 A.2d 832, 836 (1983)). The petitioner therefore asserts, "[p]lain logic dictates that an executed show cause order which is in effect, the judicial decree cannot be part of an application for the judicial decree ... [and] therefore, an 'application for judicial decree' requires merely a proposed show cause order." Petitioner's

---

**3.** Preliminarily, the Court of Special Appeals observed that the record indicates that the petitioner did not file even an unexecuted show cause order with the complaint and affidavit, rejecting the County's argument, which was based on a literal reading of the docket entries and the page numbering of the submissions. According to the County, the show cause order, consisting of two pages was numbered pages 1 and 2 and the complaint and affidavit, consisting of four pages were numbered 3–6, makes obvious that the unexecuted show cause order was filed contemporaneously with the complaint and affidavit. This issue is not before us. Denying the respondent's motion to return the money or currency, the trial court noted on the accompanying order a reference to Maryland Rule 2-101(a). That rule provides that "a civil action is commenced by filing a complaint with a court." It is clear, therefore, that, by that notation, the court expressed its belief that it was irrelevant whether the show cause order, executed or unexecuted, was filed.

brief at 8. Moreover, adopting the *Vieira* majority's analogy of the executed show cause order to a summons, the petitioner asserts that "it does not follow that the General Assembly intended that the show cause order be judicially executed prior to the ninety-day filing deadline." Petitioner's brief at 10. Indeed, it points out that a summons issues only after the complaint is filed; thus, it is the complaint, not the issuance of a summons, that tolls limitations.

Not surprisingly, the respondent is of the opposite opinion, contending that in order for a forfeiting authority to comply with § 297(d)(2) it must file an executed show cause order, not merely a proposed show cause order, contemporaneously with the complaint and the affidavit.

### III.

Money is subject to forfeiture under our statute. *See* § 297(b)(6).[4] Moreover, the money which is the subject of these proceedings was properly seized by the petitioner. Sec-

---

**4.** Section 297(b) provides in pertinent part:

(b) *Property Subject to Forfeiture.*—The following shall be subject to forfeiture and no property right shall exist in them:

\* \* \* \* \* \*

(6) All money, coin, currency, or weapons which have been used or intended for use in connection with the illegal manufacture, distribution, dispensing or possession of controlled dangerous substances or controlled paraphernalia. All money, coin, currency, or weapons which are found in close proximity to contraband controlled dangerous substances, controlled paraphernalia, or forfeitable records of the importation, manufacture, or distribution of controlled dangerous substances are presumed to be forfeitable under this paragraph. The burden of proof is upon a claimant of the property to be rebut this presumption.

This money, currency, or weapons shall be deemed to be contraband of law and all rights, title and interest in and to the money, currency, or weapons shall immediately vest in and to Baltimore City or the county in which was seized if it was seized by a county or Baltimore City law enforcement agency, including a local sheriff's department which is the law enforcement agency, the municipal corporation, if seized by municipal authorities, or, if it was seized by State law enforcement authorities, the State; and no such money, currency, or weapons shall be returned to any person claiming it, or to any other person, except in the matter hereinafter provided.

tion 297(d)(1)(i) permits the seizure of property (defined to include money, *see* § 297(a)(11)(i)4.), subject to forfeiture if the seizure "is incident to an arrest."

The procedure for instituting forfeiture proceedings for money or currency is addressed in § 297(d)(2), which provides:

(2) In the event of seizure pursuant to paragraph (1)(iii) and (iv) of this subsection, proceedings under subsection (f) of this section shall be instituted promptly, except all proceedings relating to money or currency, that shall be instituted within 90 days from the date of final disposition of criminal proceedings that arise out of Article 27, §§ 276 through 302, inclusive.

(i) All applications for the forfeiture of money or currency contraband shall be made by the director of finance of Baltimore City, the county treasurer or appropriate county finance officer, municipal treasurer, or the Attorney General. The applications shall be by complaint, affidavit and show cause order and shall be filed in the District Court or circuit court of the County.

(ii) The complaint, affidavit and show cause order shall be served in the first instance pursuant to Maryland Rule 2–121 or Maryland Rule 3–121(a), and thereafter, the summons having been returned non est, the director of Finance of Baltimore City, county treasurer or appropriate county finance officer, municipal treasurer, or Attorney General may proceed pursuant to Maryland Rule 2–122 or Maryland 3–121(b) or (c).

(3)(i) If proceedings relating to money or currency are not instituted by the State or a political subdivision within the 90–day period, the money or currency seized under this section, upon petition by the defendant, shall be returned to the defendant.

(ii) If the defendant fails to petition for return of the money or currency within 1 year from the date of final disposition of criminal proceedings, the money or currency shall revert to the treasury as provided by subsection (f) of this section.

We are called upon, once again, to interpret a legislative enactment. The principles pursuant to which that task is performed are clear and well settled in this State. The object of statutory construction is to effectuate, after discerning, the real intention of the Legislature. *City of Baltimore v. Cassidy*, 338 Md. 88, 93–94, 656 A.2d 757, 760 (1995); *Gargliano v. State*, 334 Md. 428, 435, 639 A.2d 675, 678 (1994). The search for legislative intent begins, and ordinarily ends, with the words of the statute under review. *Cassidy*, 338 Md. at 93, 656 A.2d at 760; *Harris v. State*, 331 Md. 137, 145, 626 A.2d 946, 950 (1993). Where, giving the words of the statute their ordinary and common meaning, *see Dickerson v. State*, 324 Md. 163, 171, 596 A.2d 648, 652 (1991); *Cunningham v. State*, 318 Md. 182, 185, 567 A.2d 126, 127 (1989), the statute is clear and unambiguous, it usually is unnecessary to go further. *State v. Thompson*, 332 Md. 1, 7, 629 A.2d 731, 734 (1993); *Mustafa v. State*, 323 Md. 65, 73, 591 A.2d 481, 485 (1992). We may, however, confirm the meaning reached by reference to the words of the statute by considering the purpose, goal or context of the statute. *See Thompson*, 332 Md. at 7, 629 A.2d at 734. This means that we are required to interpret the statute as a whole, *State v. Crescent Cities Jaycees Found., Inc.*, 330 Md. 460, 468, 624 A.2d 955, 959 (1993), and, if appropriate, in the context of the entire statutory scheme of which it is a part. *Id.; Popham v. State Farm Mutual Insurance Company*, 333 Md. 136, 148, 634 A.2d 28, 34 (1993); *GEICO v. Insurance Comm'r*, 332 Md. 124, 131–32, 630 A.2d 713, 717 (1993); *Baltimore Gas & Electric Co. v. Public Service Comm'n*, 305 Md. 145, 157, 501 A.2d 1307, 1313 (1986). Moreover, no word in the statute or no portion of the statutory scheme should be read "so as to render the other, or any portion of it, meaningless, surplusage, superfluous or nugatory." *GEICO*, 332 Md. at 132, 630 A.2d at 714.

▮ Section 297 is, and was intended to be, a harsh law. *See Prince George's County v. Blue Bird Cab Company*, 263 Md. 655, 662, 284 A.2d 203, 207 (1971), in which the Court of Appeals explained:

[I]n some ways [§ 297] is a harsh law; however, it is within the Legislature's power to decide whether such a forfeiture provision is desirable. Its purpose is to attempt not only to curtail drug traffic in this state, but to discourage such a blight from continuing in the future. Historically, decisive action has been required to prevent any plague from spreading. In the present case, the Legislature has clearly indicated its purpose for this act. It is to control the proliferation of dangerous drugs in our society and it is a noble purpose, but an arduous task.

*See also Ewachiw v. Director of Finance,* 70 Md.App. 58, 60, 519 A.2d 1327, 1329, *cert. denied,* 309 Md. 605, 525 A.2d 1075 (1987) (describing § 297 "[a]s part of [the State's] 'full court press' against the illicit drug traffic"). Section 276 sets forth the Legislature's findings and purpose for enacting a comprehensive drug law, as well as its directions as to how the law should be interpreted and implemented. In that regard, having noted its intention "to prevent [the] abuse [of controlled dangerous substances] which results in a serious health problem to the individual and represents a serious danger to the welfare of the people of the State of Maryland," subsection (a), the Legislature directed that "[t]he provisions of this subheading shall be liberally interpreted and construed so as to effectuate its general purpose...." Subsection (b). *State v. 1988 Toyota Pick-Up,* 334 Md. 359, 375, 639 A.2d 641, 649 (1994).

On the other hand, it has long been settled in this State that forfeitures are not favored in the law. *See Commercial Credit Corp. v. State,* 258 Md. 192, 199, 265 A.2d 748, 752 (1970); *State v. 158 Gaming Devices,* 59 Md.App. 44, 51, 474 A.2d 545, 548 (1984), *rev'd in part on other grounds,* 304 Md. 404, 499 A.2d 940 (1985). Consequently, it is well settled that forfeiture statutes are to be interpreted under a "strict constructionist theory." *158 Gaming Devices,* 59 Md.App. at 52, 474 A.2d at 549. Therefore, although the petitioner's assertion that this statute is to be liberally interpreted and construed is correct, the forfeiting authority is still required to follow the procedures prescribed by the statute, and these

procedures should be strictly imposed to provide post seizure due process protection to the defendant. It is significant that the Legislature chose to use the word, "shall." Ordinarily, when used in the language of a statute, that word is regarded as being a direct indication that the Legislature directed that certain conduct is *required*. *State v. One 1979 Pontiac Firebird*, 55 Md.App. 394, 400, 462 A.2d 73, 76 (1983) (emphasis added).

■ Section 297(d)(2) is clear and unambiguous. It requires that "all proceedings relating to money or currency, . . . shall be instituted within 90 days from the date of final disposition of criminal proceedings that arise out of Article 27, §§ 276–302, inclusive." Subsection (d)(2)(i) addresses applications for forfeiture. It quite clearly prescribes by whom an application is to be made and defines of what an application shall consist. In the case of a county, it provides that the appropriate county finance office shall make the application and that "[t]he applications shall be by complaint, affidavit and show cause order," filed in the district court or circuit court of the county. Subsection (d)(2)(ii) describes how the affidavit is to be served, both initially and thereafter. The consequences of an untimely initiation of forfeiture proceedings for money or currency contraband are prescribed in subsection (d)(3): where such proceedings are not instituted properly within the prescribed 90 day period, the money or currency "shall be returned to the defendant," upon petition filed by the defendant within one year of the final disposition of the criminal proceedings. *See Bozman*, 296 Md. at 500, 463 A.2d at 837.

Patently, an application for the forfeiture of money or currency contraband consists of three components: a complaint, an affidavit, and a show cause order. The language of § 297(d)(2) is clear in this regard. It is equally clear that the entire application, rather than simply the complaint and affidavit, must be filed within the ninety-day period. Moreover, it is the entire application that must be served on the defendant both in the first instance and upon subsequent reissues following non-service.

■ Neither "show cause order" nor "order" is defined in the Maryland Rules. Rule 2–311, captioned "Motions," is, however, instructive as to the meaning of those terms. Section (a) of that rule provides that "[a]n application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, and shall set forth the relief or order sought." [5] This suggests that an "order" emanates from a court and, in fact, constitutes a command or decree of the court. By parody of reasoning, a "show cause order", then, is a command by a court, directing a party to explain or justify, on or before the date indicated in the order, why the action described in the order should or should not occur. This is consistent with the definition of "order" and "show cause order" set forth in Black's Law Dictionary at 756 and 962 (6th ed. 1991):

> *Order.* A mandate; precept; command or direction or authoritatively given; rule or regulation. Direction of a court or judge made ... in writing, and not included in a judgment.... An application for an order is a motion.

> *Show Cause Order.* Court order, decree, execution, etc., to appear as directed, and present to the court such reasons and considerations as one has to offer why a particular order, decree, etc., should not be confirmed, take effect, be executed, or as the case may be.

> An order to a person or corporation, on motion of opposing party, to appear in court and explain why the court should not take a proposed action. If the person or corporation fails to appear or to give sufficient reasons why the court should take no action, the court will take the action.

The function served by a show cause order is similar to that performed by a summons. A summons is "a writ notifying the person named in the summons that (1) an action against that person has commenced in the court in which the summons is

---

**5.** Perhaps proposed show cause order is not the proper term and motion for show cause order more appropriately and accurately describes the nature of the order sought.

issued and (2) in a civil action, failure to answer the complaint may result in entry of judgment against that person and, in a criminal action, failure to attend may result in issuance of a warrant for that person's arrest." Maryland Rule 1–202(y). It is issued by the clerk of the court "forthwith" upon the filing of the complaint. Maryland Rule 2–112(a). A summons is required to contain the following information:

> (1) The name of the court and the assigned docket reference, (2) the name and address of the party requesting the summons, (3) the name and address of the person to be served as set forth in the complaint, (4) the date of issue, (5) the time within which it must be served, (6) the time within which the defendant must file a response to the complaint by pleading or motion, (7) notification to the defendant that failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought, and (8) the time within which the return of service shall be made.

Maryland Rule 2–114(b).

◼ Like the summons, an executed show cause order provides the defendant with notice that an action has been instituted, prescribes the time in which a response is to be made, and, at least by implication, apprises the defendant of the consequences of failing to respond. A proposed, or unexecuted, show cause order, on the other hand, lacks the indicia of a summons. Until it has been executed, not only can a proposed show cause order not issue, but it does not contain the critical information necessary to constitute proper notification of the defendant.[6]

That the reference to "show cause order" in § 297(d)(2)(i) is to an executed order is supported by comparing that section's show cause order requirement with the comparable section of

---

6. An executed show cause order must include most, if not all, the information required by Maryland Rule 2–114(b) to be contained in a summons. *See* Maryland Rule 1–301.

§ 297(h).[7]  The latter section pertains generally to the procedure for initiating forfeiture proceedings and the notice required to be given with regard thereto.  Subsection (h)(4)(i) provides:

> (4) Within ten days after the filing of the complaint:

> (i) Copies of the summons and complaint shall be sent by certified mail requesting "restrictive delivery—show to whom, date, address of delivery" and first-class mail on all known owners and lienholders whose identities are reasonably subject to discovery, including for real property all owners and lienholders shown in the records prescribed by law for notice or perfection of the lien.

In the case of forfeiture proceedings for currency contraband the executed show cause order avoids the need for the clerk to issue a summons;  in effect, it serves and operates as the summons component of the application.  Furthermore, as the petitioner suggests, whether the court will execute a show cause order depends on the adequacy of the complaint and the affidavit accompanying the proposed order.  Unless the averments included in the complaint and affidavit are sufficient, *see* § 297(h)(3)[8], there simply is no basis for the court to issue

---

7.  The provision of subsection (d) pertaining to the service of the application on the defendant is subsection (d)(2)(ii), which requires service pursuant to Maryland Rule 2–121 or 3–121(a), in the first instance, or Maryland Rules 2–122 or 3–121(b) or (c), in the case of a subsequent service.

8.  Section 297(h)(3) provides:
    > (3) A complaint shall contain the following:
    > (i) A description of the property seized;
    > (ii) A statement of the time and place where seized;
    > (iii) The owner, if known;
    > (iv) The person in possession, if known;
    > (v) The name of any lienholder, if any, if known or reasonably subject to discovery;
    > (vi) An allegation that the property is subject to forfeiture;
    > (vii) If the forfeiting authority is seeking to forfeit a lienholder's interest in property, an allegation that the lien was created with actual knowledge that the property was being, or was to be, used in violation of this subheading;

a show cause order. Moreover, without an executed show cause order the application cannot meaningfully be served.

Section 297(h)(4)(i) is proof that the Legislature is quite capable of providing for the initiation of proceedings without including the vehicle for serving the process. *See also* Article 27, § 264(c)(2), providing, as to forfeiture of money, currency, or cash seized in connection with illegal gambling operations, "[a]ll applications for the forfeiture of contraband shall be by petition and a copy of the petition and show cause shall be served in the first instance in accordance with the Maryland Rules." To like effect, *see* Maryland Code (1992, 1994 Cum. Supp.) (§ 17–20A–04(d)(3)(4) of the Business Regulation Article.) *See also* Maryland Code (1973, 1995 Repl.Vol.) § 3–412(b)(c) of the Courts and Judicial Proceedings Article (providing, in connection with a declaratory judgment action, that "an application for further relief shall be by petition" and that "if the application is sufficient, the court, on reasonable notice, shall require any adverse party whose rights have been adjudicated by the declaratory judgment or decree, to show cause why further relief should not be granted."); Maryland Code (1974, 1988 Repl.Vol.), § 7–106(b)(c) of the Real Property Article (requiring filing of petitioner's noncompliance, "on receipt of [which], the court shall issue an order . . . to show cause"); § 8–303 and 304 of the Real Property Article (providing for the filing of an action of distress and for the issuance of a show cause order "[w]hen an action of distress is filed."); § 9–106(a)(1) of the Real Property Article ("when a petition to establish a mechanics lien is filed, the court shall review the pleadings and documents on file and may require the petitioner to supplement or explain any of the matters therein set forth. If the court determines that the lien should attach it

---

(viii) A statement of the facts and circumstances surrounding the seizure;

(ix) A statement setting forth the specific causes or grounds for forfeiture or both; and

(x) An oath or affirmation by the forfeiting authority that the contents of the complaint are true to the best of the forfeiting authority's knowledge, information, and belief.

shall pass an order that directs the owner to show cause...").

Several reasons may explain why the Legislature required the filing of an executed show cause order contemporaneously with the complaint and affidavit. Clearly, the Legislature intended that proceedings for the forfeiture of money or currency proceed expeditiously. *See Bozman,* 296 Md. at 499, 463 A.2d at 836 ("the legislative purpose plainly was to place a specific time limitation of 90 days after a concluded criminal prosecution in the case in the seizure of money or currency in lieu of the previously indefinite requirement that the filing 'shall be instituted promptly.'"). This purpose is served only if the show cause order component of the affidavit is interpreted to mean a fully executed order. In the absence of that interpretation, the forfeiture proceedings would proceed as would any other civil action. The summons would not be issued until after the filing of the complaint (in the case of § 297(h)(4)(i), up to 10 days after filing) and, upon being served, the defendant would be required to answer within the time prescribed by the rules, in this case, pursuant to Rule 2–321, which is 30 days. Rather than expediting the processing of the claim, the opposite result would occur. Construing the notice component of the application as requiring only the submission of a proposed order has the same effect. By prescribing that notice occur by means of an executed show cause order, the Legislature permitted the trial court to control the timing of the defendant's answer; the trial court could, as is usually done, with show cause orders, shorten the time prescribed by the rules for filing an answer. In short, expedition is achieved only when the show cause order is executed when the complaint and affidavit are filed.

Requiring the filing of an executed show cause order within the 90–day period has yet another benefit, it potentially could avoid a waste of judicial resources by requiring the processing of only meritorious forfeiture proceedings. Section 297(b)(6) prescribes when money or currency is subject to forfeiture: when it is found in close proximity to controlled dangerous substances, paraphernalia, or forfeitable records. A forfeiture

complaint must contain an allegation that the money or currency is subject to forfeiture, *i.e.*, that it was found in proximity to the contraband. Section 297(h)(3)(ii) ("a statement of the time and place where seized") and (vi) ("an allegation that the property is subject to forfeiture"). Unless the show cause order, demonstrates, on its face, that the money or currency is subject to forfeiture, the show cause order shall not issue. Thus, the requirement that the show cause order be a part of the application for forfeiture provides some measure of protection for the defendant. *See In Re Forfeiture of U.S. Currency in the Amount of $5,300.00*, 429 So.2d 800, 803, (Fla.App.1983); *In Re Forfeiture of $10,788.00*, 580 So.2d 855, 858 (Fla.App. 1991).

Section 297(d)(2)(i) characterizes, without limitation, the summons component of the application as a "show cause order." We hold that, in so doing, the Legislature indicated its intention that an actual show cause order, *i.e.*, one that has been executed by the court, be filed, as part of the application, within 90 days of the final disposition of the criminal proceedings. The plain language of the statute mandates this conclusion. Moreover, the requirements prescribed by § 297(d)(2) are stated in mandatory terms. *See In Re James S.*, 286 Md. 702, 708, 410 A.2d 586, 589 (1980) ("[u]nder settled principles of statutory construction, the word 'shall,' is ordinarily presumed to have a mandatory meaning"); *State v. Hicks*, 285 Md. 310, 334, 403 A.2d 356, 369 (1979) (same); *Moss v. Director*, 279 Md. 561, 564–65, 369 A.2d 1011, 1013 (1977) ("it is now a familiar principle of statutory construction in this state that use of the word 'shall' is presumed mandatory unless its context would indicate otherwise...."); *Bright v. Unsat. C. & J. Fund Bd.*, 275 Md. 165, 169, 338 A.2d 248, 251 (1975) ("[W]e observe[d] that ordinarily the word 'shall,' unless the context within which it is used indicates otherwise, is mandatory when used in a statute, and thus denotes an imperative obligation inconsistent with the idea of discretion."); *Maryland Med. Service, Inc. v. Carver*, 238 Md. 466, 479, 209 A.2d 582, 589 (1965) ("ordinarily the word 'shall' is mandatory and it is presumed that the Legislature used this

word in its usual and natural meaning unless there is something in the legislation to indicate otherwise"). This indicates that the Legislature intended the requirement prescribed to be discharged literally. *Johnson v. State*, 282 Md. 314, 321, 384 A.2d 709, 713 (1978) ("we have stated on numerous occasions that in the absence of a contrary contextual indication, the use of the word 'shall' is presumed to have a mandatory meaning, ... and thus denotes an imperative obligation inconsistent with the exercise of discretion"); *Bright v. Unsatisfied C. & J. Fund Bod.*, 275 Md. at 169, 338 A.2d at 251 (same). It is also clear, as we have seen, that the Legislature knows how to prescribe a different requirement.

The Legislature, by enacting § 297(d)(3), provided a sanction, also stated in mandatory terms, for noncompliance with the requirements of subsection (d)(2)(i). We need not, therefore, guess at what should occur in the event of noncompliance; the Legislature has made perfectly clear that, upon petition by the defendant within one year, the money or currency shall be returned, no proceedings having been instituted as required within the 90 days prescribed. This is to be contrasted with, *e.g.* the situation in *State v. One 1980 Harley Davidson Motorcycle VIN # 9G3593950*, 303 Md. 154, 160–62, 492 A.2d 896, 899–900 (1985) and in *Motor Vehicle Administration v. Shrader*, 324 Md. 454, 467–68, 597 A.2d 939, 945–46 (1991). In the former case, this Court refused to apply the dismissal sanction to a forfeiture action for noncompliance with Art. 27, § 297(n), which provided, as relevant, that the "hearing shall be scheduled no more than 30 days after conviction of the defendant" in the absence of a provision providing for such sanction.[9] In *Shrader*, we held, that in the

---

9. While this case was pending, § 297(n) was repealed and replaced with § 297(h)(7), which provided:

    (i) When all of the registered owners or secured parties or both have answered or in default, the case shall be assigned for trial.

    (ii) The court shall set the case for trial not less than thirty nor more than sixty days thereafter.

That section has further evolved. It is now subsection (h)(6), which now provides:

absence of a sanction for noncompliance with § 16–205.1(f)(5)(i), requiring the MVA mandatorily to schedule a hearing within 30 days of receipt of a request for hearing, postponement, and not dismissal was the appropriate relief to accord the defendant. *Id.*[10]

*JUDGMENT AFFIRMED, WITH COSTS.*

RAKER, Judge, dissenting:

We granted certiorari in this case to answer two questions:

1. Whether the commencement of a forfeiture of currency action requires the actual *execution* of a Show Cause Order by a judge and the filing of that Order by the clerks' office

---

(i) The court shall set a hearing on the forfeiture claim within 60 days after the later of the posting or final publication of the notice under paragraph (4) of this subsection if an answer has been timely filed.

(ii) The court may order forfeiture without a hearing of the property interest of any person who fails to timely file an answer.

**10.** The opening of a pandora's box of other issues is an additional basis the petitioner gives for challenging the results reached by the majority of the Court of Special Appeals. In particular, like the *Vieira* majority, the petitioner points to the potential litigation which may result from forfeiting authorities' attempting to get show cause orders signed within ninety days. In that regard, it wonders:

In future cases, the following question might arise: If a forfeiting authority exercises due diligence and makes reasonable efforts to have the court execute a show cause order, but, through no fault of the forfeiting authority, the court fails to do so and the forfeiting authority is consequently unable to file, or have docketed, a show cause order within the ninety-day period, is the court nonetheless compelled to order the return of the money or currency?

*Vieira v. Prince George's County*, 101 Md.App. at 240, 645 A.2d at 648.

Another argument the petitioner advances in support of its contention that § 297 requires the filing of only a proposed show cause order echoes concerns expressed by the *Vieira* dissenting opinion. Judge Garrity expressed the belief that, requiring the proposed show cause order to be executed and filed simultaneously with the complaint and affidavit "is [to] directly and unconstitutionally [thrust] the judicial branch into the initiation of forfeiting proceedings, a function that is vested solely in the proper executive authority." *Id.* at 241, 645 A.2d at 649 (Garrity, J. dissenting).

We find merit in neither argument.

within 90 days from the disposition of criminal proceedings which give rise to the action?

2. Whether the Circuit Court had sufficient evidence to support a finding that all necessary requirements under Maryland Code (1957, 1992 Repl.Vol., 1995 Cum.Supp.) Article 27, § 297[1] were met by Petitioner?

I dissent because I disagree with the holding of the majority construing Article 27, § 297(d)(2)(i) to require an *executed* show cause order as part of an application for forfeiture. I believe, as Judge Garrity concluded in his dissent from the Court of Special Appeals opinion, *Vieira v. Prince George's County*, 101 Md.App. 220, 241, 645 A.2d 639, 649 (1994) (Garrity, J., dissenting), that this interpretation of the statute is contrary to the Legislature's intent. Furthermore, although the majority did not reach the second issue, I also believe that the Circuit Court had sufficient evidence to support a finding that Prince George's County satisfied the necessary requirements to timely initiate the forfeiture proceeding.

## I.

The statutory provision we are called upon to interpret is that portion of the civil forfeiture statute found in Article 27, § 297(d)(2), which provides that:

> In the event of seizure pursuant to paragraph (1)(iii) and (iv) of this subsection, proceedings under subsection (f) of this section shall be instituted promptly, except all proceedings relating to money or currency, that shall be instituted within 90 days from the date of final disposition of criminal proceedings that arise out of §§ 276 through 302 of this article.
>
> (i) All applications for the forfeiture of money or currency contraband shall be made by the director of finance of Baltimore City, the county treasurer or appropriate county finance officer, municipal treasurer, or the Attorney

---

1. Unless otherwise noted, all cites herein are to Maryland Code (1957, 1992 Repl.Vol., 1995 Cum.Supp.) Article 27, § 297.

General. The applications shall be by complaint, affidavit and show cause order and shall be filed in the District Court or circuit court of the county.

(ii) The complaint, affidavit and show cause order shall be served in the first instance pursuant to Maryland Rule 2–121 or Maryland Rule 3–121(a), and thereafter, the summons having been returned non est ... pursuant to Maryland Rule 2–122 or Maryland Rule 3–121(b) or (c).

The statute also prescribes the remedy for noncompliance with these requirements; if proceedings are not initiated within the allotted ninety-day time period, the money seized must be returned to the defendant, provided a petition for its return is filed within one year of the final criminal disposition. § 297(d)(3).

In interpreting these statutory provisions, we look to the clear and well settled principles of construction to "effectuate, after discerning, the real intention of the Legislature." Maj. op. at 7. Section 276(a) of the statute sets forth the Legislature's rationale in enacting the statute:

The General Assembly ... finds and declares that the illegal manufacture, distribution, possession, and administration of controlled dangerous substances have a substantial and detrimental effect on the health and general welfare of the people of the State of Maryland. It is the purpose of this subheading to establish a uniform law controlling the manufacture, distribution, possession, and administration of controlled dangerous substances and related paraphernalia in order to insure their availability for legitimate medical and scientific purposes, but to prevent their abuse which results in a serious health problem to the individual and represents a serious danger to the welfare of the people of the State of Maryland.

As the Legislature has clearly and plainly expressed, the purpose of the statute is to combat the serious problem of drug use and distribution. The language of the statute should be construed in accord with this objective.

Furthermore, the Legislature has provided express guidance on how the statute should be interpreted. The statute provides that:

> The provisions of this subheading shall be *liberally interpreted and construed* so as to effectuate its general purpose as stated hereinabove.

§ 276(b) (emphasis added). Despite this unambiguous language, and the majority's acknowledgement that use of the word "shall" is a "direct indication that the Legislature directed that certain conduct is *required*," the majority ultimately adopts a "strict constructionist" interpretation of the statute. Maj. op. 340 Md. at 659, 667 A.2d at 902.

I believe our prior decisions clearly establish that although forfeitures are ordinarily disfavored in the law, the presumption against forfeitures is inapplicable when the General Assembly specifically enacts a forfeiture statute such as § 297. As we observed in *State v. 1988 Toyota,* 334 Md. 359, 639 A.2d 641 (1994):

> [W]e are mindful that forfeitures are disfavored in law because they are considered harsh extractions, odious, and to be avoided when possible. *See United States Coin & Currency v. Dir.,* 279 Md. 185, 187, 367 A.2d 1243 (1977); *Commercial Credit Corp. v. State,* 258 Md. 192, 199, 265 A.2d 748 (1970). But § 297(b) was plainly intended by the legislature as strong "medicine" in the war against drugs. Indeed it was intended to be harsh in order to be effective.... [I]n view of its clear language and purpose, the statute must be construed presumptively in favor of forfeiture absent the applicability of statutory exceptions.

*Id.* at 375, 639 A.2d at 649.[2] Accordingly, in the present case,

---

2. In *One 1988 Toyota,* we adopted a liberal construction of the automobile forfeiture provisions of § 297, holding that an automobile was subject to forfeiture because it was used in connection with the attempted sale of a controlled dangerous substance, although the police had actually substituted a non-controlled dangerous substance without the perpetrator's knowledge. 334 Md. 359, 373, 639 A.2d 641, 648 (1994). The Legislature amended the statute in 1995 to clarify the courts' authority to review executive decisions to recommend forfeiture for abuse of discretion. 1995 Md.Laws ch. 620 (codified as amended at Maryland Code (1957, 1992 Repl.Vol., 1995 Cum.Supp.) Art. 27, § 297(k)(1)). The amendment did not, however, alter the liberal construction portion of our decision in *One 1988 Toyota.*

I would also construe the forfeiture statute liberally.[3]

Assuming, *arguendo*, that the majority's "strict construction" approach is correct, their interpretation of the statute strains logic and imposes an infeasible obligation upon the forfeiting authority. While § 297(d)(2)(i) states that "application shall be by Complaint, Affidavit and Show Cause Order," the forfeiting authority, in this case the County, only has the ability to file a complaint, an affidavit and a *proposed* order within the prescribed ninety-day period. Assuming, as the majority does, that the Legislature intended that the complaint, affidavit, and order are to be filed contemporaneously, it is only logical to assume that the show cause order that must be filed is a *proposed* order and not an executed order

---

**3.** The majority relies on *Commercial Credit Corp. v. State*, 258 Md. 192, 199, 265 A.2d 748, 752 (1970), for the premise that "forfeiture statutes are to be interpreted under a 'strict constructionist theory.' " Maj. op. at 659, 667 A.2d at 902. *Commercial Credit*, however, was decided before the 1970 revisions to the forfeiture laws took effect. 1970 Md.Laws ch. 430. One year after *Commercial Credit* was decided, in *Pr. George's Co. v. Blue Bird Cab*, 263 Md. 655, 284 A.2d 203 (1971), we held that the new statute had effectively overruled *Commercial Credit*. *Id.* at 660, 284 A.2d at 205–06.

In subsequent decisions, the viability of *Commercial Credit* has been somewhat unclear. Since *Blue Bird*, a number of other cases decided by this Court and the Court of Special Appeals have returned to the premise of *Commercial Credit*, advocating "strict construction" of the forfeiture statute. *See, e.g., United States Coin & Currency v. Dir.*, 279 Md. 185, 187, 367 A.2d 1243, 1244 (1977); *State v. 158 Gaming Devices*, 59 Md.App. 44, 52, 474 A.2d 545, 548 (1984), *rev'd in part on other grounds*, 304 Md. 404, 499 A.2d 940 (1985). Nevertheless, throughout its revisions, the statute has retained its directive to interpret its terms broadly. § 276(b). Furthermore, the basic purpose of the statute remains unchanged: to strip the drug trafficker of his illegal profits. We should still construe the statute in accord with this intent.

The Supreme Court has noted the potential for government abuse in forfeiture proceedings, *Caplin and Drysdale, Chartered v. United States*, 491 U.S. 617, 634, 109 S.Ct. 2646, 2657, 105 L.Ed.2d 528 (1989), and current reforms are intended to curtail overzealous forfeiture prosecutions. D. Smith, *Prosecution and Defense of Forfeiture Cases* ¶ 1.01, at 1–20 to 1–22, and ¶ 1.02, at 1–26 to 1–30 (1995 & Supp. 16). The majority's interpretation of the initiating procedure does not further this objective because it focuses on the court rather than the prosecuting authority.

because the County is utterly powerless to *ensure* that any order of court is filed within the specified time frame. If the court determines to execute an Order to Show Cause, the obligation to file the order lies with the judge, and the responsibility to docket the order rests with the clerk. The forfeiting authority has no authority or power to control the actions of the judge or the clerk.[4] *See State v. One 1980 Harley Davidson,* 303 Md. 154, 160, 492 A.2d 896, 899 (1985) ("[T]he State's Attorneys filed timely requests for hearings ... which is all they could do; the court controls its calendar, not the State's Attorney. Consequently, the State should not ordinarily suffer the sanction ... because of an error on the part of the court's administrative staff."). Furthermore, the effect of the majority's interpretation is to shift the power to control the timeliness of the filing of a complaint from the executive authority to the judicial branch of government.

---

4. In his dissent, Judge Garrity pointed out that:

> The legislative scheme of initiation of such proceedings was simply not designed to be made dependent on the judicial act of signing a show cause order within 90 days following conviction. Granting that the time constraint imposed by the legislature ... is for the benefit of the defendant, I do not believe that we can ignore the fact that this time constraint is imposed on the executive officer who files the complaint for forfeiture, not on the court. The executive officer seeking forfeiture must institute proceedings within 90 days after final disposition of criminal proceedings, in default of which the seized currency is returnable to the defendant. Since the executive officer can only include a proposed show cause order, not a judicially executed one, with the complaint for forfeiture, the only logical interpretation of 'show cause order' in Art. 27 § 297(d)(2)(i) and (ii) is that of a proposed order for a judge to sign.

*Vieira v. Prince George's County,* 101 Md.App. 220, 241–42, 645 A.2d 639, 649 (1994) (Garrity, J., dissenting). Judge Garrity interpreted "show cause order" to mean *"proposed* show cause order" for purposes of both the application for forfeiture, § 297(d)(2)(i), and the materials to be served on the defendant, § 297(d)(2)(ii). Although I agree that a proposed show cause order is all that is required in the State's application for forfeiture, I believe the defendant must be served with an *executed* show cause order. Service of the proposed order would not provide the defendant with notice of the date by which he must respond to avoid forfeiture.

## II.

I also believe that the record supports a finding that Prince George's County initiated the forfeiture proceedings in a timely manner. I cannot agree with the Respondent's contention that a proposed order form was not included in the original filing. The numbering of the papers filed suggests the contrary conclusion. Furthermore, there is nothing before us to suggest that proposed orders are ever noted on the docket by the clerk's office. More importantly, however, as Judge Garrity said, it is exalting form over substance to find that the failure to submit a mere form containing a show cause order requires return of properly seized money to a convicted drug dealer. *Vieira v. Prince George's County*, 101 Md.App. 220, 242, 645 A.2d 639, 649–50 (1994) (Garrity, J., dissenting).

In light of the majority's interpretation of the statute, the General Assembly may wish to consider a change by appropriate legislation.[5]

I am authorized to state that Chief Judge MURPHY joins in the views expressed herein.

---

**5.** One effect of the majority's interpretation of the statute may be to deter state authorities from pursuing forfeiture under the state law and to encourage them to pursue forfeiture under the federal statutes. *See, e.g.,* 21 U.S.C. §§ 881(e)(1)(A) & (e)(3). This would require the state forfeiture authority to split the proceeds with the federal authorities, resulting in significant revenue loss to the State. *See Cavaliere v. Town of North Beach*, 101 Md.App. 319, 324, 330, 646 A.2d 1058, 1060, 1063 (1994). As the Supreme Court observed in *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989):

The sums of money that can be raised for law-enforcement activities this way [by forfeiture proceedings] are substantial, and the Government's interest in using the profits of crime to fund these activities should not be discounted.

491 U.S. at 629, 109 S.Ct. at 2654.