Daniela Bottini, et al. v. Department of Finance, Montgomery County, Maryland, No. 3, September Term, 2016

**FORFEITURE – CONTROLLED DANGEROUS SUBSTANCE VIOLATIONS – MD. CODE ANN., CRIM. PROC. (2001, 2008 REPL. VOL., 2016 SUPP.) § 12-101(m)(1) – PROPERTY – TANGIBLE AND INTANGIBLE PERSONAL PROPERTY – MONEY – BANK ACCOUNT – MD. CODE ANN., CRIM. PROC. (2001, 2008 REPL. VOL., 2016 SUPP.) § 12-304 – DEADLINE FOR FILING COMPLAINT FOR FORFEITURE –** Funds contained in a bank account are "money" for purposes of the forfeiture statute—Md. Code Ann., Crim. Proc. (2001, 2008 Repl. Vol., 2016 Supp.) ("CP") §§ 12-101 to 12-505—under CP § 12-101(m)(1)(iv), and are not a type of tangible or intangible personal property under CP § 12-101(m)(1)(ii); and, as such, in accordance with CP § 12-304(c)(1), the forfeiting authority timely filed the complaint for forfeiture of a bank account within ninety days after the final disposition of the criminal proceedings arising out of the Controlled Dangerous Substances law, the deadline applicable to the filing of a complaint for forfeiture of money.

Circuit Court for Montgomery County
Case No. 379754-V

Argued: September 7, 2016

IN THE COURT OF APPEALS

OF MARYLAND

No. 3

September Term, 2016

_____

DANIELA BOTTINI, ET AL.

v.

DEPARTMENT OF FINANCE,
MONTGOMERY COUNTY, MARYLAND

_____

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Getty
Harrell, Glenn T., Jr. (Retired,
Specially Assigned),

JJ.

_____

Opinion by Watts, J.
Adkins, J., dissents.

_____

Filed: October 7, 2016

Everyone is familiar with the saying "the money is in the bank."  But we possibly have not considered what this phrase really means and what a bank account actually contains.  This case calls upon the Court to address the question of whether the funds in a bank account are "money" for purposes of Maryland's forfeiture statute, Md. Code Ann., Crim. Proc. (2001, 2008 Repl. Vol., 2016 Supp.) ("CP") §§ 12-101 to 12-505.[1]  In this case, the answer to that question is determinative of whether the forfeiting authority timely filed a complaint for forfeiture within the deadline set forth in CP § 12-304.  Specifically, we must decide whether funds contained in a bank account are "money" under CP § 12-101(m)(1)(iv) of the forfeiture statute, and whether the forfeiting authority timely filed a complaint for forfeiture of that bank account.  We hold that the funds contained in a bank account are "money" for purposes of the forfeiture statute under CP § 12-101(m)(1)(iv), and are not a type of tangible or intangible personal property under CP § 12-101(m)(1)(ii); we further hold that, in accordance with CP § 12-304(c)(1), the forfeiting authority timely filed the complaint for forfeiture of the bank account within ninety days after the final disposition of the criminal proceedings arising out of the Controlled Dangerous Substances law, the deadline applicable to the filing of a complaint for forfeiture of money.

## BACKGROUND

On April 13, 2012, law enforcement officers of the Montgomery County

---

[1]The forfeiture statute at issue in this case concerns violations of the Controlled Dangerous Substances law.

Department of Police arrested Gianpaolo Bottini ("Gianpaolo"),[2] Petitioner, at his residence for illegal drug activity.[3] Shortly after Gianpaolo's arrest, as part of their investigation and pursuant to a search warrant, law enforcement officers seized from Gianpaolo's residence, among other things, drug paraphernalia, items with suspected drug residue, tally sheets, Bank of America banking documents and statements, and United States currency in the amount of $5,610.[4]

Following his arrest, Gianpaolo was released on bond, and was scheduled to return to court on April 16, 2012, for further proceedings. On the morning of April 16, 2012, while free on bond and before appearing in court, Gianpaolo withdrew all of the money contained in two Bank of America bank accounts, titled in his name, totaling $64,388.33. On the same day and at the same time, that exact amount of money—$64,388.33—was deposited into a Bank of America bank account belonging to Gianpaolo's sister, Daniela Bottini ("Daniela"), Petitioner (together with Gianpaolo, "Petitioners"). The following day, April 17, 2012, Daniela wrote herself a check drawn on her Bank of America bank account, opened a bank account in her name only with Capital One, and deposited $63,891.93 into the Capital One bank account.

On April 18, 2012, law enforcement officers obtained subpoenas for both of

---

[2]Because Gianpaolo and his sister, Daniela Bottini, have the same surname, for clarity, we shall refer to each by their first names as needed.

[3]Gianpaolo was charged with the manufacture and distribution of controlled dangerous substances and possession of controlled dangerous substances with intent to distribute.

[4]The seized currency was the subject of a separate forfeiture action, which was not contested; the separate forfeiture action is not at issue in this case.

Gianpaolo's Bank of America bank accounts. At that time, law enforcement discovered that all of the money contained in Gianpaolo's Bank of America bank accounts had been withdrawn, and they traced the money to Daniela's Capital One bank account. On that same day, April 18, 2012, a law enforcement officer applied for a search and seizure warrant for Daniela's Capital One bank account. In the application, the law enforcement officer averred that law enforcement had obtained wage records for Gianpaolo, which indicated that Gianpaolo had no reported income in the past year. Indeed, Gianpaolo had no legitimate source of income at all supporting the amount of money contained in his Bank of America bank accounts. This led law enforcement to believe that the money that was transferred from Gianpaolo's Bank of America bank accounts was either the direct proceeds of illegal drug transactions or illegal drug proceeds that had been commingled with legitimate funds.

On April 18, 2012, a judge of the Circuit Court for Montgomery County ("the circuit court") issued a search and seizure warrant for the Capital One bank account. The following day, April 19, 2012, the Montgomery County Department of Police seized the Capital One bank account. On the same day, Montgomery County sent to Petitioners a "Notice of Money Seizure," advising them of its intent to petition for forfeiture.

Approximately one year later, on May 10, 2013, Gianpaolo's criminal charges were resolved, when he was convicted and sentenced to twenty years' imprisonment.[5] On

---

[5]Pursuant to a plea agreement, Gianpaolo pled guilty to one count of possession of controlled dangerous substances with intent to distribute, and the charge for the manufacture and distribution of controlled dangerous substances was nol prossed.

August 1, 2013, less than ninety days after the conclusion of the criminal proceedings, the Department of Finance of Montgomery County, Maryland ("the County"), Respondent, filed in the circuit court a Complaint Petition for Currency Forfeiture as to the Capital One bank account. On August 20, 2013, the County filed an Amended Complaint Petition for Currency Forfeiture. On September 27, 2013, Daniela filed an answer.

In the meantime, on August 23, 2013, the circuit court issued a show cause order, ordering Gianpaolo and Daniela to appear before the circuit court on November 18, 2013. On November 18, 2013, the circuit court conducted a hearing. At the hearing, the circuit court treated Daniela's answer as a motion to dismiss. Specifically, in the answer, Daniela argued that the Capital One bank account was not "money" for purposes of the forfeiture statute, and that, as a result, the complaint for forfeiture was untimely filed. In the answer, Daniela argued that the bank account was intangible personal property and that the forfeiture statute required that a complaint seeking forfeiture of intangible personal property be filed ninety days after seizure. The County's complaint for forfeiture had been filed more than ninety days after seizure and would have been untimely under that theory. The circuit court rejected that argument and denied the motion to dismiss, orally ruling from the bench as follows:

> Two issues before the Court. That wonderful [issue] of what is the definition of money. What constitutes money. And the second, definition as to whether the procedural requirements were, had been me[]t with respect to the timing of the filing from the, under the statute, and the date of the complaint having been filed on August 1, 2013.
>
> With respect to the first argument, it brings to mind that old Potter Stewart . . . line . . . from the Supreme Court decision of trying to define obscenity and Justice Stewart's comment that, I don't know how to define

obscenity, but I sure know it when I see it. I have the same application to money. I don't know, I don't know that I need the legislature to tell me what the definition of money is. I know that when I open on the screen an account and I look at my money, it may be in the bank, and I guess technically the bank's holding it for me, but it's money. It better be there, it's my money.

So, to suggest that an account in a bank is not money and therefore [there] would be a procedural defect in this case suggesti[ng] that we don't have (unintelligible) jurisdiction, this Court simply rejects. The amount that's in the account by anybody's definition, at least in this Court's definition, would constitute money.

Secondly, the procedural requirement with regard to when the complaint has been filed. The Complaint was filed on August 1st[,] 2013, that is the date the Court looks to as to ascertain whether it was timely filed, it was, and the Motion to Dismiss is denied.

After its oral ruling, and with the agreement of the parties, the circuit court set the case in for a trial on the merits.

On April 2, 2014, the circuit court conducted a trial. At trial, Daniela again argued that the Capital One bank account was not "money" and that the complaint for forfeiture was untimely filed. At the conclusion of the trial, the circuit court again rejected that argument, explaining, in pertinent part:

The Court, in this case, finds that the intent of the legislature was to treat the designation of money, not simply to be as currency, meaning fungible cash, as argued by [d]efense counsel, but, rather, proceeds which are in a liquid state in the sense that they are funds on deposit subject to the call of the owner of those funds.

So, I'm making a determination that, in this case, the funds which originally were deposited to two Bank of America accounts of Gianpaolo Bottini, which were cashed in on the morning of a court appearance of April 16, 2013, from Account No. 8612, in the amount of $56,009.78, and on Account ending in 5676 for $8,378.55 that those liquidations, which were then made into cashier's checks, which, ultimately, were deposited to a Bank of America account of Daniela Bottini, and then, ultimately, transferred to a Capital One account of Daniela Bottini, within a couple days of the

- 5 -

termination of those accounts by Gianpaolo Bottini that those funds are money within the meaning of the statute. Therefore, the period of time for which the forfeiture must be filed is the 90 days after termination of the criminal action.

The circuit court ruled that only Gianpaolo had any right, title, or claim to the funds in the Capital One bank account, and that Daniela had no right, title, or claim to the funds, stating:

> I am satisfied that, in this case, where Daniela Bottini judicially admitted, in response to the Court's question, that the funds were transferred to her as an accommodation for designated purposes, that they were not a gift from her brother, that they were not a loan from her brother to her, but for identified purposes of paying lawyers, caring for parents, and things of that nature, that, in essence, [Gianpaolo] did not surrender in that manner his interest in the funds, [the circuit court], therefore, find[s] that, other than being the titled owner, Daniela Bottini, the claimant in this case, does not have any interest in these funds, and, therefore, I decline to allow her any part or portion of these funds.

The circuit court pointed out, however, that Gianpaolo had one year from the date of his criminal conviction to file an answer to the complaint for forfeiture and to assert a claim to the funds in the Capital One bank account. Thus, the circuit court denied Daniela's claim, but declined to rule on Gianpaolo's claim until a year had passed from Gianpaolo's criminal conviction, *i.e.*, until the time for Gianpaolo to file an answer and claim to the funds had expired. On April 10, 2014, the circuit court issued an order consistent with its oral ruling.

On May 8, 2014, prior to the expiration of the one-year period, Gianpaolo filed an answer and a request for a hearing. On August 21, 2014, the circuit court conducted a trial. At the conclusion of the trial, the circuit court found that the funds in the Capital One bank account constituted illegal drug proceeds, and, therefore, granted forfeiture of the entire

amount. On that same day, the circuit court issued an order, in which it mandated "that the $63,891.83 in currency, which is the subject of this forfeiture petition, be and is hereby forfeited to [the] County[.]"

Thereafter, Gianpaolo filed a motion for new trial or, in the alternative, a motion to alter or amend the judgment, and the circuit court denied the motion.

Petitioners noted an appeal to the Court of Special Appeals. In an unreported opinion, a majority of the panel of the Court of Special Appeals affirmed the judgment of the circuit court. Specifically, the majority held that the funds in the Capital One bank account are "money" for purposes of the forfeiture statue, and that, accordingly, the complaint for forfeiture was timely filed. In a dissent, on the other hand, one member of the panel disagreed that the Capital One bank account constituted "money" for purposes of the forfeiture statute, and instead would have concluded that the bank account is a contractual interest, claim, or right—*i.e.*, intangible personal property—and that, as such, the complaint for forfeiture was untimely filed.

Petitioners thereafter filed a petition for a writ of *certiorari*, which this Court granted on February 19, 2016. See Bottini v. Dep't of Fin., Montgomery Cnty., 446 Md. 290, 132 A.3d 193 (2016).

**STANDARD OF REVIEW**

Maryland Rule 8-131(c) governs review of a bench trial and provides:

When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses.

In Breeding v. Koste, 443 Md. 15, 27, 115 A.3d 106, 113 (2015), we further explained the

standard of review applicable under Maryland Rule 8-131(c):

> We give due regard to the trial court's role as fact-finder and will not set aside factual findings unless they are clearly erroneous. The appellate court must consider evidence produced at the trial in a light most favorable to the prevailing party and if substantial evidence was presented to support the trial court's determination, it is not clearly erroneous and cannot be disturbed. Questions of law, however, require our non-deferential review. When the trial court's decision involves an interpretation and application of Maryland statutory and case law, our Court must determine whether the [trial] court's conclusions are legally correct. Where a case involves both issues of fact and questions of law, this Court will apply the appropriate standard to each issue.

(Citation, brackets, and ellipsis omitted).

Additionally, because the issue in this case involves statutory interpretation, we set

forth the pertinent rules of statutory construction:

> The cardinal rule of statutory construction is to ascertain and effectuate the intent of the General Assembly.
>
> As this Court has explained, to determine that purpose or policy, we look first to the language of the statute, giving it its natural and ordinary meaning. We do so on the tacit theory that the General Assembly is presumed to have meant what it said and said what it meant. When the statutory language is clear, we need not look beyond the statutory language to determine the General Assembly's intent. If the words of the statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning, we will give effect to the statute as it is written. In addition, we neither add nor delete words to a clear and unambiguous statute to give it a meaning not reflected by the words that the General Assembly used or engage in forced or subtle interpretation in an attempt to extend or limit the statute's meaning. If there is no ambiguity in the language, either inherently or by reference to other relevant laws or circumstances, the inquiry as to legislative intent ends.
>
> If the language of the statute is ambiguous, however, then courts consider not only the literal or usual meaning of the words, but their meaning and effect

in light of the setting, the objectives, and the purpose of the enactment under consideration. We have said that there is an ambiguity within a statute when there exist two or more reasonable alternative interpretations of the statute. When a statute can be interpreted in more than one way, the job of this Court is to resolve that ambiguity in light of the legislative intent, using all the resources and tools of statutory construction at our disposal.

If the true legislative intent cannot be readily determined from the statutory language alone, however, we may, and often must, resort to other recognized indicia—among other things, the structure of the statute, including its title; how the statute relates to other laws; the legislative history, including the derivation of the statute, comments and explanations regarding it by authoritative sources during the legislative process, and amendments proposed or added to it; the general purpose behind the statute; and the relative rationality and legal effect of various competing constructions.

In construing a statute, we avoid a construction of the statute that is unreasonable, illogical, or inconsistent with common sense.

In addition, the meaning of the plainest language is controlled by the context in which is appears. As this Court has stated, because it is part of the context, related statutes or a statutory scheme that fairly bears on the fundamental issue of legislative purpose or goal must also be considered. Thus, not only are we required to interpret the statute as a whole, but, if appropriate, in the context of the entire statutory scheme of which it is a part.

Wagner v. State, 445 Md. 404, 417-19, 128 A.3d 1, 9-10 (2015) (citation and brackets omitted).

## DISCUSSION[6]

Petitioners contend that the Capital One bank account is not "money" under the forfeiture statute because, according to Petitioners, the funds in a bank account are the assets of the financial institution. According to Petitioners, a bank account is intangible personal property because Petitioners theorize that a bank depositor's property right vis-à-

---

[6]Although on brief Petitioners raise two issues, for purposes of this opinion, we shall combine the issues into one.

vis the bank is the intangible right to draw checks or make withdrawals against the bank's assets. Petitioners argue that a bank account cannot be money because, unlike money, which "must have a physical location[,]" a bank account has no physical location and consists only of the right to demand or negotiate value to a designated entity, either the depositor or someone else. Petitioners assert that the term "money," as used in the forfeiture statute, is intended to apply only to physical, tangible greenbacks and coinage. Because Petitioners contend that a bank account is intangible personal property and not money, they argue that the County failed to timely file the complaint for forfeiture within ninety days after April 19, 2012, the date on which the Capital One bank account was seized, as required by statute.

The County responds that, under the forfeiture statute, funds held in a bank account are money. The County contends that the term "money" refers equally to coins and paper bank notes used as cash and currency and to wealth generally. The County asserts that, considering the definitions of "money" and "bank account" together leads to the conclusion that a bank account holds or reflects the existence of money. The County maintains that, based on the plain language of the term "money" and the intent of the General Assembly in enacting the forfeiture statute, a bank account is treated the same as money in forfeiture actions. Because the County contends that the bank account is money, the County argues that it timely filed the complaint for forfeiture within ninety days after the disposition of the criminal proceedings on the charges involving controlled dangerous substances, as required by statute.

The concept of forfeiture is derived from English common law, and is "grounded in

the legal fiction that an inanimate object can be guilty of a crime[.]" <u>Dir. of Fin. of Prince George's Cnty. v. Cole</u>, 296 Md. 607, 616-17, 621, 465 A.2d 450, 456, 458 (1983) (citation and internal quotation marks omitted).  Although Maryland did not practice common law forfeitures in the same manner as England, our State has adopted by statute a method of forfeiture.  <u>See</u> <u>id.</u> at 618, 465 A.2d at 456.  The Maryland forfeiture statute continued the common law rationale that "forfeiture was against the offending article and a penalty for carelessness" and that "property is treated as the offender"; indeed, under the forfeiture statute, "the innocence of the owner of the property is no defense" and "the forfeiture itself is not considered part of the punishment for the offense[.]"  <u>Id.</u> at 618-19, 465 A.2d at 457 (citations omitted).[7]  Moreover, in Maryland, forfeiture proceedings are civil proceedings completely separate and distinct from any criminal proceedings; "[t]he result of the civil proceedings either perfects the government's interest in the goods, or results in a determination that they are not contraband and should be returned."  <u>Cole</u>, 296 Md. at 619, 465 A.2d at 457 (citations omitted).  <u>See also</u> <u>State v. Greer</u>, 263 Md. 692, 694, 284 A.2d 233, 235 (1971) ("Forfeiture . . . is a civil in rem proceeding, separate from any criminal action and it is of little significance whether there is a criminal conviction."  (Citations

---

[7]In <u>Prince George's Cnty. v. Blue Bird Cab Co.</u>, 263 Md. 655, 658, 284 A.2d 203, 204-05 (1971), we stated as much and further explained forfeiture as follows:

> 'It is the property which is proceeded against, and, by resort to a legal fiction, held guilty and condemned as though it were conscious instead of inanimate and insentient.  In a criminal prosecution it is the wrongdoer in person who is proceeded against, convicted and punished.  The forfeiture is no part of the punishment for the criminal offense.'

(Quoting <u>Various Items of Personal Prop. v. United States</u>, 282 U.S. 577, 581 (1931)).

- 11 -

omitted)).

In 1970, the General Assembly "enacted a comprehensive statute designed to control trafficking in controlled dangerous substances[,]" and, "[a]s part of its 'full court press' against the illicit drug traffic, it provided for the forfeiture to the State of all money or currency found to have been used or intended for use in connection with the drug traffic." Ewachiw v. Dir. of Fin. of Balt. City, 70 Md. App. 58, 60, 519 A.2d 1327, 1328, cert. denied, 309 Md. 605, 525 A.2d 1075 (1987). In Prince George's Cnty. v. Blue Bird Cab Co., 263 Md. 655, 662, 284 A.2d 203, 207 (1971), we acknowledged that the forfeiture statute, "in some ways[,] is a harsh law[,]" but explained:

> [H]owever, it is within the [General Assembly]'s power to decide whether such a forfeiture provision is desirable. Its purpose is to attempt not only to curtail drug traffic in this state, but to discourage such a blight from continuing in the future. Historically, decisive action has been required to prevent any plague from spreading. In the present case[,] the [General Assembly] has clearly indicated its purpose for this act. It is to control the proliferation of dangerous drugs in our society and it is a noble purpose, but an arduous task. The measures that have been taken are not out of step with the great weight of authority.

See also Prince George's Cnty. v. Vieira, 340 Md. 651, 658, 667 A.2d 898, 901 (1995) (The forfeiture statute "is, and was intended to be, a harsh law." (Citation omitted)).

Although the forfeiture statute is a harsh law, as to interpretation of the forfeiture statute, this Court has explained:

> [I]t is well settled that forfeiture statutes are to be interpreted under a "strict constructionist theory." Therefore, although the . . . statute is to be liberally interpreted and construed . . . , the forfeiting authority is still required to follow the procedures prescribed by the statute, and these procedures should be strictly imposed to provide post seizure due process protection to the defendant.

- 12 -

<u>Vieira</u>, 340 Md. at 659-60, 667 A.2d at 902 (citation omitted).

In this case, we must decide whether funds contained in a bank account are "money" for purposes of the forfeiture statute, because this determination governs the applicable deadline for the filing of a complaint for forfeiture and, ultimately, whether the complaint for forfeiture was timely filed. CP § 12-304 sets forth the deadlines for filing a complaint for forfeiture, providing, in relevant part:

> (a) *In general*. – Except as provided under subsections (b)[8] and (c) of this section, a complaint seeking forfeiture shall be filed within the earlier of:
>
>> (1) 90 days after the seizure; or
>>
>> (2) 1 year after the final disposition of the criminal charge for the violation giving rise to the forfeiture.
>
> . . .
>
> (c) *Proceedings about money*. – (1) A **proceeding about money** shall be filed within 90 days after the final disposition of criminal proceedings that arise out of the Controlled Dangerous Substances law.
>
>> (2) If the State or a political subdivision does not file proceedings about money within the 90-day period, the money seized under this title shall be returned to the owner on request by the owner.
>>
>> (3) If the owner fails to ask [for] the return of the money within 1 year after the final disposition of criminal proceedings, as provided under [CP] § 12-403 . . . , the money shall revert to:
>>
>>> (i) the political subdivision in which the money was seized; or
>>>
>>> (ii) the State, if the money was seized by State authorities.

(Emphasis added). The deadline for filing a complaint for forfeiture is dependent upon

---

[8]CP § 12-304(b) sets forth the deadline for filing a complaint for the forfeiture of a motor vehicle—within forty-five days after the seizure of the motor vehicle.

whether the item sought to be forfeited is money or some other property. Thus, the

classification of the property sought to be forfeited is critical.

Pursuant to CP § 12-102(a)(12), property subject to forfeiture includes:

everything of value furnished, or intended to be furnished, in exchange for a controlled dangerous substance in violation of the Controlled Dangerous Substances law, all proceeds traceable to the exchange, and all negotiable instruments and securities used, or intended to be used, to facilitate any violation of the Controlled Dangerous Substances law.[9]

CP § 12-101(l) defines "proceeds" for purposes of the forfeiture statute as "property

derived directly or indirectly in connection with or as a result of a crime under the

Controlled Dangerous Substances law." "Property," in turn, is defined, in pertinent part,

as follows:

"Property" includes:

(i) real property and anything growing on or attached to real property;

(ii) tangible and intangible personal property, including:

1. securities;
2. negotiable and nonnegotiable instruments;
3. vehicles and conveyances of any type;
4. privileges;
5. interests;
6. claims; and
7 rights;

(iii) an item, object, tool, substance, device, or weapon used in connection with a crime under the Controlled Dangerous Substances law; and

---

[9]At the time of the forfeiture proceedings in this case, the provision that is now CP § 12-102(a)(12) was CP § 12-102(a)(11). See 2016 Md. Laws 177 (Vol. I, Ch. 5, S.B. 528). It was renumbered without change. Thus, for clarity, we shall refer to the current paragraph.

(iv) money.

CP § 12-101(m)(1).[10]

Here, we hold that the funds contained in the Capital One bank account are "money" for purposes of the forfeiture statute under CP § 12-101(m)(1)(iv), and are not a type of tangible or intangible personal property under CP § 12-101(m)(1)(ii); and we hold that, in accordance with CP § 12-304(c)(1), the County timely filed the complaint for forfeiture within ninety days after the final disposition of Gianpaolo's criminal proceedings arising out of the Controlled Dangerous Substances law, the deadline applicable to the filing of a complaint for forfeiture of money. As an initial matter, we note that it is undisputed that the funds within the Capital One bank account were subject to forfeiture because they were "proceeds traceable to the exchange" of controlled dangerous substances. CP § 12-102(a)(12).[11] The issue boils down to what the funds in a bank account constitute for purposes of the forfeiture statute, *i.e.*, whether the funds in a bank account constitute money or some other type of property.

We begin by examining the plain language of the forfeiture statute. By its plain language, CP § 12-101(m)(1) distinguishes between money on the one hand and tangible and intangible personal property on the other hand. In other words, for purposes of the

---

[10]CP § 12-101(m)(2) delineates what "property" does not include; that definition is not relevant to this case.

[11]At oral argument, in response to a question from the Court as to whether it is undisputed that the funds in the Capital One bank account were traceable to controlled dangerous substances, Petitioners' counsel acknowledged that Petitioners do not dispute the circuit court's factual finding that the funds in the Capital One bank account were proceeds of an illegal drug enterprise.

- 15 -

forfeiture statute, money is distinct from tangible and intangible personal property, as evidenced by the separate classification in CP § 12-101(m)(1) and by the different deadline for filing a complaint for forfeiture of money set forth in CP § 12-304(c)(1). Although the forfeiture statute identifies seven types of tangible and intangible personal property, see CP § 12-101(m)(1)(ii), the forfeiture statute does not specify what falls within the classification of "money," nor does the forfeiture statute provide a separate definition for the term "money." Under this circumstance, we turn to the "natural and ordinary meaning" of the term "money." Wagner, 445 Md. at 417, 128 A.3d at 9 (citation omitted). To ascertain the natural and ordinary meaning of the term "money," we look to dictionary definitions as a starting point. See Montgomery Cnty. v. Deibler, 423 Md. 54, 67, 31 A.3d 191, 198 (2011) ("The County's reliance on a dictionary definition provides a useful starting point for determining what the statutory terms mean. Although dictionary definitions do not provide dispositive resolutions of the meaning of statutory terms, it is proper to consult a dictionary or dictionaries for a term's ordinary and popular meaning." (Citations, brackets, and internal quotation marks omitted)).

Black's Law Dictionary defines "money" as follows:

1. The medium of exchange authorized or adopted by a government as part of its currency; esp., domestic currency <coins and currency are money>. 2. Assets that can be easily converted to cash <demand deposits are money>. 3. Capital that is invested or traded as a commodity <the money market>. 4. (*pl.*) Funds; sums of money <investment moneys>. — Also spelled (in sense 4) *monies*.

Money, Black's Law Dictionary (10th ed. 2014) (citation omitted). Similarly, Merriam-Webster defines "money," in pertinent part, as:

1.      : something generally accepted as a medium of exchange, a measure of value, or a means of payment: as

        a: officially coined or stamped metal currency
        b: money of account
        c: paper money

2         a: wealth reckoned in terms of money
        b: an amount of money
        c *plural*: sums of money: funds

3         : a form or denomination of coin or paper money

Money, Merriam-Webster (2015), http://www.merriam-webster.com/dictionary/money

[https://perma.cc/2QFP-BNDR] (capitalization omitted). Money has also been described

as follows:

A general, indefinite term for the measure and representative of value; currency; the circulating medium; cash. "Money" is a generic term, and embraces every description of coin or bank-notes recognized by common consent as a representative of value in effecting exchanges of property or payment of debts. Money is used in a specific and also in a general and more comprehensive sense. In its specific sense, it means what is coined or stamped by public authority, and has its determinate value fixed by governments. In its more comprehensive and general sense, it means wealth.

"What is MONEY?," The Law Dictionary, http://www.thelawdictionary.org/money/

(citation omitted).

These definitions demonstrate that the term "money," defined in its most narrow

sense, means coins and paper money used as cash and currency, and defined in a broader

sense, means assets that can easily be converted to cash, or wealth. Thus, utilizing the

ordinary definition of "money" above, it is clear that funds contained in a bank account—

which certainly can be said to be a person's assets that can easily be converted to cash—

constitute "money." Put simply, the term "money" encompasses more than just physical

currency in the form of coins and paper money, and extends to assets that can easily be converted to physical currency, or wealth, such as the funds contained in a bank account. We simply are not persuaded that the definition of the term "money" somehow precludes a determination that funds in a bank account are money, or that the term "money" as used in CP § 12-304(c)(1)—providing that a complaint for forfeiture of money "shall be filed within 90 days after the final disposition of criminal proceedings that arise out of the Controlled Dangerous Substances law"—or in CP § 12-101(m)(1)(iv), is meant to refer only to the narrowest sense of the term, namely, tangible coins and paper bills. Nothing in either CP § 12-101(m)(1)(iv)'s or CP § 12-304(c)(1)'s plain language purports to limit the term "money" to coins and paper bills or to otherwise contradict the commonsense understanding of the term "money."

Notably, CP § 12-101(m)(1) does not identify a "bank account" as a particular type of property, nor does the forfeiture statute provide a definition of the term "bank account" that somehow would exclude it from being classified as money. Accordingly, the forfeiture statute itself does not preclude our holding that funds in a bank account constitute money, *i.e.*, nothing in CP § 12-101(m)(1) or CP § 12-304 dictates that funds in a bank account must be classified as some type of property other than money. This makes sense, because, as the County contended at oral argument, a bank account has no value in and of itself, separate and distinct from the money contained within it. In other words, a bank account itself is not property; rather, it is the funds, or money, contained within the bank account that constitute property that is subject to forfeiture.

Our holding that funds in a bank account constitute money for purposes of the

forfeiture statute under CP § 12-101(m)(1)(iv), and correspondingly for purposes of the filing deadline contained in CP § 12-304(c)(1), is also supported by the ordinary meaning of the terms "account" and "bank account." Merriam-Webster defines an "account," in pertinent part, as "money deposited in a bank account and subject to withdrawal by the depositor[.]" Account, Merriam-Webster (2015), http://www.merriam-webster.com/dictionary/account [https://perma.cc/BF9G-ZECU]. And "bank account" has been defined as follows:

> A sum of money placed with a bank or banker, on deposit, by a customer, and subject to be drawn out on the lat[]ter's check. The statement or computation of the several sums deposited and those drawn out by the customers on checks, entered on the books of the bank and the depositor's pass-book.

"What is BANK-ACCOUNT?," The Law Dictionary, http://www.thelawdictionary.org/bank-account/ (citation omitted). Considering the definition of the term "bank account" in conjunction with the definition and commonsense understanding of the term "money" leads to the inescapable conclusion that a bank account holds or contains money and reflects the existence of money.

This commonsense understanding of the terms "money" and "bank account" is consistent with how, in other contexts, this Court has used the term "money" to refer to funds that are deposited, withdrawn, and held within a bank account. See, e.g., Wagner, 445 Md. at 421, 128 A.3d at 11 (In a criminal case, this Court determined that the evidence was sufficient to support the trial court's finding that a defendant "took and used the money in the [bank] Account for her own purposes and did so without [her] Father's knowledge or authorization[,]" and that the defendant did not dispute the trial court's factual finding

- 19 -

that she "understood that the money in the [bank] Account belonged to [her] Father[.]" (Brackets and internal quotation marks omitted)); Attorney Grievance Comm'n v. Ross, 428 Md. 50, 78, 50 A.3d 1166, 1182 (2012) (In concluding that a lawyer violated Maryland Lawyers' Rule of Professional Conduct—now the Maryland Attorneys' Rule of Professional Conduct—1.15(a), concerning holding client funds separate from the lawyer's own property, this Court stated that the lawyer "placed the money directly into his personal bank account."); Omayaka v. Omayaka, 417 Md. 643, 657, 12 A.3d 96, 104 (2011) (In a divorce case involving an allegation of dissipation of marital assets, this Court stated that the husband questioned the wife "about how she spent the funds that she withdrew from her bank accounts in 2005, thereby presenting the [trial c]ourt with both (1) evidence of the withdrawals, and (2) [the wife]'s explanation of what she did with the money."). In short, we conclude that the plain meaning of the term "money," as used in CP § 12-101(m)(1)(iv) and CP § 12-304(c)(1), includes the funds contained in a bank account.

We do not find persuasive Petitioners' reliance on CP § 12-102(b) and CP § 12-202(b) for the contention that the term "money" in the forfeiture statute, including in CP § 12-101(m)(1)(iv) and CP § 12-304(c)(1), refers only to physical cash and currency. We shall address each statute in turn. At the time of the forfeiture proceedings in this case, as to money or weapons that are found near controlled dangerous substances, CP § 12-102(b) provided, in its entirety:

> (1)(i) Money or weapons that are found in close proximity to a contraband controlled dangerous substance, controlled paraphernalia, or forfeitable records of the importation, manufacture, or distribution of controlled dangerous substances are contraband and presumed to be forfeitable.

- 20 -

(ii) A claimant of money or weapons has the burden to rebut the presumption.

(2) All rights in, title to, and interest in the money or weapons immediately shall vest in:

(i) the State, if the seizing authority was a State unit;

(ii) the county in which the money or weapons were seized, if the seizing authority was a county law enforcement unit, including a sheriff's office; or

(iii) the municipal corporation in which the money or weapons were seized, if the seizing authority was a law enforcement unit of a municipal corporation.

(3) The money or weapons may be returned to the claimant only as this title provides.[12]

Thus, at the time of the forfeiture proceedings in this case, CP § 12-102(b)(1) narrowly pertained to "[m]oney or weapons that [we]re found in close proximity to[,]" among other things, contraband controlled dangerous substances or paraphernalia. As to money and weapons that were found in close proximity to drugs, there was a presumption that those items were forfeitable based solely on their physical location at the time of seizure; that presumption was rebuttable by a claimant. To be sure, CP § 12-102(b)(1) concerned "money" in its narrowest sense, *i.e.*, coins and paper bills, that were physically capable of being located near contraband at the time of seizure. Thus, in that one respect, CP § 12-102(b)(1) limited the term "money."

---

[12]As of February 20, 2016, CP § 12-102(b)(1) was eliminated, and CP § 12-102(b)(2) and (3) were renumbered. See 2016 Md. Laws 177-78 (Vol. I, Ch. 5, S.B. 528). The purpose for eliminating that paragraph was to "repeal[] a certain presumption that certain money or weapons are forfeitable." Id. at 175.

Significantly, nothing in CP § 12-102(b)(1) purported to limit the definition of the term "money" in other locations in the forfeiture statute, and the term "money" is not qualified in CP § 12-101(m)(1)(iv) or CP § 12-304(c)(1) by the phrase "found in close proximity" as it was in CP § 12-102(b)(1). Nor is money subject to forfeiture only if it was found in close proximity as was set forth in CP § 12-102(b)(1). Indeed, money subject to forfeiture is described in CP § 12-102(a) in a manner that makes it clear that money need not be paper bills or coins and physically able to be in close proximity to contraband. See CP § 12-102(a)(6) ("money of more than $300 . . . used or intended to be used in connection with the unlawful manufacture, distribution, dispensing, or possession of a controlled dangerous substance or controlled paraphernalia"); CP § 12-102(a)(12) ("everything of value furnished, or intended to be furnished, in exchange for a controlled dangerous substance in violation of the Controlled Dangerous Substances law, all proceeds traceable to the exchange . . ."). In short, although CP § 12-102(b) refers to "money" that is found in a particular location, *i.e.*, in close proximity to contraband, we see no reason as to why this circumstance limits the definition of money throughout the forfeiture statute. In other words, simply because "money" in CP § 12-102(b) refers specifically to money that is found in close proximity to controlled dangerous substances, does not preclude money from having a broader meaning under the forfeiture statute.

As to CP § 12-202(b), concerning the photographing of contraband money, that subsection provides, in its entirety:

The seizing authority that seizes money that is contraband shall immediately:

(1) photograph the contraband money and record the quantity of each

- 22 -

denomination of coin or currency seized; and

(2) deposit the money to the account of the appropriate local financial authority.

Commonsensically, to be photographed under CP § 12-202(b), the money seized needs to be in a physical form capable of being photographed. As with former CP § 12-102(b)(1), CP § 12-202(b) appears to qualify the term "money" to refer to it in the narrowest and most physical sense—as "coin or currency[.]" That CP § 12-202(b) qualifies the term "money," however, does not mean that the definition of the term "money" is so limited in other locations in the forfeiture statute, such as in CP § 12-101(m)(1)(iv) or CP § 12-304(c)(1), where the term "money" is not qualified or limited by a phrase such as "coin or currency[.]"

Notwithstanding Petitioners' contentions, we are unconvinced that funds in a bank account constitute tangible or intangible personal property under CP § 12-101(m)(1)(ii), and specifically that a bank account is an interest, a claim, or a right as those terms are used in the forfeiture statute. Nor are we persuaded that funds in a bank account constitute a security under CP § 12-101(m)(1)(ii)1. As an initial matter, we observe that, at oral argument, Petitioners argued that the Capital One bank account constituted an interest, claim, or right under the forfeiture statute. However, on brief, Petitioners did not raise the specific argument that they raised at oral argument concerning a bank account being an interest, a claim, or a right; rather, on brief, Petitioners simply stated that a bank account constituted intangible personal property, and that a depositor retains "the intangible right to draw checks or make withdrawals[.]" In other words, the argument that a bank account constitutes an interest, claim, or right was raised in this Court at oral argument and was not

- 23 -

briefed.

In any event, CP § 12-101(m)(1)(iv) specifically differentiates money from an interest, claim, right, or security. To the extent that bank accounts may be similar in some regard to tangible or intangible personal property, we observe that the General Assembly has specifically identified securities, interests, claims, and rights as types of tangible or intangible personal property under CP § 12-101(m)(1)(ii), but has not identified a bank account in a similar fashion, or even at all. To be sure, an individual has, in a very basic or colloquial sense, an interest, claim, and right to the money contained in his or her bank account, but the same could be said as to money in any form, *i.e.*, a person has an interest, claim, and right to money that they own, in whatever form it is in. This colloquial understanding that an individual has an interest, claim, or right to his or her money does not, however, control the meaning of these terms under CP § 12-101(m)(1). In short, it is evident from the plain language of CP § 12-101(m)(1) that the funds in a bank account constitute "money" under CP § 12-101(m)(1)(iv)—and not some type of tangible or intangible personal property under CP § 12-101(m)(1)(ii); and, as such, funds in a bank account are also "money" for purposes of the filing deadline set forth in CP § 12-304(c)(1).

Although the plain language of the forfeiture statute is unambiguous and our analysis could end at this point, we nonetheless point out that our holding is fully supported by the legislative history and purpose of the forfeiture statute. Indeed, a review of the forfeiture statute's legislative history reinforces the conclusion that the plain meaning of the term "money" in CP § 12-101(m)(1)(iv) and CP § 12-304(c)(1) includes the funds in a bank account. The legislative history of the forfeiture statute demonstrates that, in 1970,

the General Assembly enacted a comprehensive controlled dangerous substances act for the purposes of, among other things, "providing for a comprehensive set of schedules, regulations, offenses, and penalties for those substances which are classified as controlled dangerous substances, [and] providing a procedure for forfeiture of certain property under certain conditions[.]" 1970 Md. Laws 881 (Ch. 403, S.B. 883). To that end, the General Assembly enacted Md. Code (1957, 1971 Repl. Vol.), Art. 27, § 276, concerning the purpose and construction of the controlled dangerous substances act, which provided, in pertinent part: "The General Assembly . . . finds and declares that the illegal manufacture, distribution, possession, and administration of controlled dangerous substances have a substantial and detrimental effect on the health and general welfare of the people of the State of Maryland." 1970 Md. Laws 881 (Ch. 403, S.B. 883). The forfeiture statute, originally enacted as Md. Code (1957, 1971 Repl. Vol.), Art. 27, § 297, provided, in relevant part:

> (a) The following shall be subject to forfeiture and no property right shall exist in them:
>
> . . .
>
> (6) All **money or currency** which shall be found in close proximity to contraband controlled dangerous substances or controlled paraphernalia or which otherwise has been used or intended for use in connection with the illegal manufacture, distribution, dispensing or possession of controlled dangerous substances or controlled paraphernalia.

(Emphasis added).

> Art. 27, § 297(a)(6) was thereafter amended to read, in pertinent part, as follows:
>
> (a) *Property subject to forfeiture.*—The following shall be subject to forfeiture and no property right shall exist in them:

. . .

(6) All **money, coin, or currency** which has been used or intended for use in connection with the illegal manufacture, distribution, dispensing or possession of controlled dangerous substances or controlled paraphernalia. All **money, coin, or currency** which is found in close proximity to contraband controlled dangerous substances, controlled paraphernalia, or forfeitable records of the importation, manufacture, or distribution of controlled dangerous substances are presumed to be forfeitable under this paragraph. The burden of proof is upon the claimant of the property to rebut this presumption.

1982 Md. Laws 3049-50 (Vol. IV, Ch. 472, S.B. 83) (emphasis added). The General Assembly amended the forfeiture statute multiple times and, in 1989, Art. 27, § 297(a) became a definitional subsection that provided, in pertinent part:

(10) "Proceeds" includes property derived directly or indirectly in connection with or as a result of an offense or offenses under this subheading.

(11) (I) "Property" includes: . . . 4. **Money**.

1989 Md. Laws 2384-85 (Vol. IV, Ch. 285, S.B. 419) (emphasis added) (paragraph break omitted). What had been Art. 27, § 297(a)(6) became Art. 27, § 297(b)(6), and provided, in relevant part, as follows:

(b) The following shall be subject to forfeiture and no property right shall exist in them:

. . .

(6) All **money, coin, currency**, or weapons which have been used or intended for use in connection with the illegal manufacture, distribution, dispensing or possession of controlled dangerous substances or controlled paraphernalia. All **money, coin, currency**, or weapons which are found in close proximity to contraband controlled dangerous substances, controlled paraphernalia, or forfeitable records of the importation, manufacture, or distribution of controlled dangerous substances are presumed to be forfeitable under this paragraph. The burden of proof is upon a claimant of

- 26 -

the property to rebut this presumption.

1989 Md. Laws 2385-86 (Vol. IV, Ch. 285, S.B. 419) (emphasis added).

Thereafter, in 2001, Art. 27, § 297 was recodified in Title 12 of the new Criminal Procedure Article. 2001 Md. Laws 76-77, 445 (Vol. I, Ch. 10, S.B. 1). At that time, Art. 27, § 297(a)(10) became CP § 12-101(l), and defined "proceeds" as "includ[ing] property derived directly or indirectly in connection with or as a result of a crime under the Controlled Dangerous Substances law." 2001 Md. Laws 449 (Vol. I, Ch. 10, S.B. 1). A Revisor's Note stated that the subsection was "new language derived without substantive change from former Art. 27, § 297(a)(10)." Id. Art. 27, § 297(a)(11), defining property, became CP § 12-101(m)(1), and "money" was still specifically identified as a type of property, separate and distinct from the other enumerated types of property. 2001 Md. Laws 449-50 (Vol. I, Ch. 10, S.B. 1). The Revisor's Note stated that the subsection—CP § 12-101(m)—was "new language derived without substantive change from former Art. 27, § 297(a)(11)." 2001 Md. Laws 450 (Vol. I, Ch. 10, S.B. 1).

Similarly, Art. 27, § 297(b)(6) was recodified at CP § 12-102, which provided, in pertinent part:

(a) In general.

The following are subject to forfeiture:

. . .

(6) Subject to subsection (b) of this section, **money** or weapons used or intended to be used in connection with the unlawful manufacture, distribution, dispensing, or possession of a controlled dangerous substance or controlled paraphernalia[.]

- 27 -

. . .

(b) **Money** and weapons.

(1) (i) **Money** or weapons that are found in close proximity to a contraband controlled dangerous substance, controlled paraphernalia, or forfeitable records of the importation, manufacture, or distribution of controlled dangerous substances are contraband and presumed to be forfeitable.

(ii) A claimant of **money** or weapons has the burden to rebut the presumption.

2001 Md. Laws 451-52 (Vol. I, Ch. 10, S.B. 1) (emphasis added). The terms "coin" and "currency" were deleted. The Revisor's Note accompanying the newly added CP § 12-102 stated that the section was "new language derived without substantive change from former Art. 27, § 297(b)(1) through the introductory language of (4) and (5) through (10)." 2001 Md. Laws 452 (Vol. I, Ch. 10, S.B. 1). Significantly, the Revisor's Note provided: "In this section, the former references to 'coin' and 'currency' are deleted in light of the reference to 'money'." Id. Thus, the General Assembly's purpose in recodifying the statute was not to limit the meaning of the term "money."

What we glean from this legislative history is that the term "money," as used in the forfeiture statute, is, and has always been, a broad term encompassing money in all of its forms, as well as coins and currency. As shown above, the forfeiture statute originally referred to "money or currency," then "money, coin, or currency," and finally just "money," as it does today. Notably, in the recodification of the forfeiture statute in the Criminal Procedure Article, the General Assembly dropped the references to "coin" and "currency," and the forfeiture statute already referred to "money." Significantly, the Revisor's Note for the recodification of the forfeiture statute states that the statute was new

language derived without substantive change, *i.e.*, the General Assembly did not view deletion of the references to "coin" and "currency" to be substantive changes. In other words, the terms "coin" and "currency" were, in essence, redundant, and were encompassed by the term "money." This demonstrates that the General Assembly intended for the term "money" to be a broad term, as it had been since the original enactment of the forfeiture statute. Thus, the relevant legislative history of the forfeiture statute establishes that the term "money" certainly encompasses and applies to the funds contained in a bank account.

And, before we move on, we reiterate the obvious point that the General Assembly could have identified a bank account and the funds contained in a bank account as a separate classification of property subject to forfeiture, or as a specific form of tangible or intangible personal property distinct from money, had it desired to do so. Cf. Montgomery Cnty. v. Philips, 445 Md. 55, 76, 124 A.3d 188, 200 (2015) ("Tellingly, the General Assembly could have, but did not, modify or otherwise raise the tax ceiling on the combined State agricultural land transfer tax and county agricultural land transfer tax that may be imposed."). Absent any indication in the relevant statutory language or the legislative history that the General Assembly intended the term "money" to narrowly apply only to coins and paper bills, or for the funds in a bank account to constitute something other than "money" under CP § 12-101(m)(1)(iv) and for purposes of the filing deadline in CP § 12-304(c)(1), we decline to construe the forfeiture statute to reach such a strained result.

Thus, having determined that funds in a bank account constitute "money" for

purposes of the forfeiture statute, and that the funds in the Capital One bank account in this case constitute money, we turn to whether the County timely filed the complaint for forfeiture of the Capital One bank account. As stated above, CP § 12-304 sets forth the various deadlines for the filing of a complaint for forfeiture depending on the type of property at issue. Specifically, as to money, pursuant to CP § 12-304(c)(1), the complaint for forfeiture must be filed "within 90 days after the final disposition of criminal proceedings that arise out of the Controlled Dangerous Substances law."

Because the funds in the Capital One bank account constitute money, the County was required to file a complaint for forfeiture within ninety days after the final disposition of the criminal proceedings related to Gianpaolo's charged violations of the Controlled Dangerous Substances law. The County did so. The final disposition of the criminal proceedings against Gianpaolo occurred on May 10, 2013, the date on which Gianpaolo was convicted and sentenced. The County had until August 8, 2013—ninety days after the final disposition of the criminal proceedings—to file a complaint for forfeiture of the Capital One bank account. On August 1, 2013, before the ninety-day deadline, the County filed in the circuit court the complaint for forfeiture of the Capital One bank account. We, therefore, conclude that the County timely filed the complaint for forfeiture, and that the circuit court and Court of Special Appeals correctly determined as much. As such, the money is, indeed, in the bank.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONERS TO PAY COSTS.**

IN THE COURT OF APPEALS

OF MARYLAND

No. 3

September Term, 2016

DANIELA BOTTINI, ET AL.

v.

DEPARTMENT OF FINANCE,
MONTGOMERY COUNTY, MARYLAND

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Getty,
Harrell, Glenn T., Jr. (Retired,
Specially Assigned),

JJ.

Dissenting Opinion by Adkins, J.

Filed: October 7, 2016

Even though the Majority's holding creates a socially desirable result, I disagree with its reasoning and ultimate ruling that a bank account is "money" under Md. Code (1957, 2008 Repl. Vol.), §§ 12-101–12-505 of the Criminal Procedure Article ("CP"). We interpret statutes using well-established rules of statutory construction, and "forfeiture statutes are to be interpreted under a 'strict constructionist theory.'" *Prince George's Cty. v. Vieira*, 340 Md. 651, 659 (1995) (citation omitted). Because I believe the Majority strays from these rules, I respectfully dissent.

The Majority finds that in CP § 12-102(b)(1) "money" is used "in its narrowest sense, *i.e.*, coins and paper bills," but nevertheless concludes that "money" in CP § 12-101(m)(1)(iv) and § 12-304(c)(1) takes on a broader meaning. Maj. Slip Op. at 21–22. The Majority asserts, "[S]imply because 'money' in CP § 12-102(b) refers specifically to money that is found in close proximity to controlled dangerous substances, does not preclude money from having a broader meaning under the forfeiture statute." Maj. Slip Op. at 22. I cannot find support for this proposition in our rules of statutory construction. Indeed, when the Court determines that a statute is unambiguous, as it has here, it should "give effect to the statute as it is written." *Wagner v. State*, 445 Md. 404, 418 (2015), *reconsideration denied* (Jan. 22, 2016) (citation omitted). The Court should not "engage in forced or subtle interpretation in an attempt to extend or limit the statute's meaning." *Id.* This is precisely what the Majority does when it concludes that "money" has a narrow meaning in CP § 12-102(b)(1), but has a broader meaning in CP § 12-101(m)(1)(iv) and § 12-304(c)(1).

The Majority dismisses the Bottinis' argument that a bank account is a form of intangible personal property under CP § 12-101(m)(1)(ii) by reframing the question this Court has been asked to answer. The Majority frames the question before us as "whether the funds in a bank account are 'money'" under Maryland's forfeiture statute, but this is not the question we were presented for review. Maj. Slip Op. at 1. Rather, we were asked to determine whether "a seized *bank account* [is] 'money.'" Pet. for Writ of Cert. at 3 (emphasis added). To be sure, the funds in a bank account are, in common parlance, considered "money" in the broad sense of the term the Majority adopts. But the account itself is not "money."

In his dissent from the Court of Special Appeals opinion, Judge Arthur concluded that a bank account is not money, but an "intangible, contractual right."[1] *Bottini v. Dep't of Finance*, No. 15-1857, slip op. at 1 (Md. Ct. Spec. App. Nov. 10, 2015) (Arthur, J., dissenting). I agree with his assessment. While the funds in a bank account may be money, the account itself is "[a] detailed statement of the debits and credits between parties to a contract or to a fiduciary relationship." *Account*, Black's Law Dictionary (10th ed. 2014). This Court has also previously recognized that "[t]he relationship between a bank and its customer is contractual." *Schultz v. Bank of Am., N.A.*, 413 Md. 15, 37 (2010) (citation

---

[1] I disagree with the Majority's conclusion that the Bottinis are precluded from arguing that a bank account is an interest, claim, or right because they did not raise this argument in their briefs. Maj. Slip Op. at 23–24. Interests, claims, and rights are categories of property listed under the subsection "tangible and intangible personal property." Md. Code (1957, 2008 Repl. Vol.), § 12-101(m)(1)(ii)5–7 of the Criminal Procedure Article ("CP"). Thus the Bottinis should not be precluded from advancing the argument that a bank account falls under one of the specific categories of property listed under CP § 12-101(m)(1)(ii).

omitted) (breach of contract and negligence action against a bank for adding another person's name to a bank account and allowing her to withdraw funds). For example, when a customer opens an account at a bank, the account is subject to the bank's terms and conditions. These terms and conditions detail the rights and obligations of the bank and the customer, including service fees, transfer and withdrawal limits, and limits on the availability of deposited funds. In exchange for depositing funds in a bank account, the customer, depending on the type of account, receives the ability to draw checks, transfer funds, pay bills electronically, and earn interest. In addition, the Federal Deposit Insurance Corporation insures a bank account holder's deposits up to $250,000. In short, a bank account is a bundle of intangible, contractual rights.

The Majority's reading of the statute also renders bank accounts "functionally indistinguishable from other types of accounts that . . . clearly would not fall within the definition of 'money.'" *Bottini*, slip op. at 1 (Arthur, J., dissenting). As Judge Arthur observed in his dissent:

> Many investment banks and brokerages offer money market funds, in which investors make deposits, earn interest, and have the ability to write checks and make withdrawals against the account balance. Many mutual funds have similar check-writing features. Had [Daniela] Bottini deposited her brother's ill-gotten gains into a money market or a mutual fund account, she would own a "security" within the meaning of Crim. Proc. § 12-101(m)(1), because the accounts are regulated by the Securities and Exchange Commission under the Investment Company Act of 1940, 15 U.S.C. §§ 80a-1–80a-64. But she could obtain "money" from the securities account in exactly the same way in which she could obtain it from a bank account. Is the securities account "money"? If not, how is the bank account different?

3

*Id.* at 1–2. The Majority does not answer these questions, but instead offers a strained interpretation of the forfeiture statute that renders the term "security" in CP § 12-101(m)(1) meaningless. If the funds in a bank account are "money," as the Majority holds, the funds in a security would also be "money," making the term "security" superfluous. This result runs contrary to our long-established rules of statutory construction. *E.g.*, *Blake v. State*, 395 Md. 213, 224 (2006) ("We construe a statute as a whole so that no word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless, or nugatory." (citation omitted)).

I recognize that the forfeiture statute is meant to prevent illegal drug manufacturers and distributors from enjoying the proceeds of their criminal enterprise. The Majority's opinion furthers this purpose. But, as the Court observed in *Vieira*, "the forfeiting authority is still required to follow the procedures prescribed by the statute, and these procedures should be strictly imposed to provide post seizure due process protection to the defendant." 340 Md. at 659–60. My construction of the statute seeks to further the statute's purpose while requiring the forfeiting authority to adhere to the statute's prescribed procedures. It would still permit the forfeiting authority to seize a bank account, without any more burdensome procedure—it simply sets a different deadline for filing its complaint for forfeiture.

Because I would hold that a bank account is not "money" under CP § 12-101(m)(1)(iv), but rather is an intangible, personal property "right" under CP § 12-101(m)(1)(ii)7, the filing deadlines provided in CP § 12-304(a) apply to bank accounts. Therefore, when pursuing forfeiture of a bank account, the forfeiting authority must file a

4

petition "within the earlier of (1) 90 days after the seizure; or (2) 1 year after the final disposition of the criminal charge for the violation giving rise to the forfeiture." CP § 12-304(a). In this case, the County seized the Bottinis' bank account on April 19, 2012 and filed a complaint for forfeiture on August 1, 2013—more than a year after its seizure—making the County's petition untimely.