*MKOS Properties, LLC v. Bradley W. Johnson, et al.*, No. 713, Sept. Term 2023. Opinion by Arthur, J.

**REAL PROPERTY—MEAN HIGH-WATER LINE—TITLE 26 OF THE CODE OF MARYLAND REGULATIONS**

The mean high-water line ("MHWL") typically marks the division between State and private ownership of the shoreline. Title 26 of COMAR prescribes how to ascertain the location of the MHWL. Generally, one ascertains the location of the MHWL by correlating on-site measurements with tidal datums published by the National Oceanic and Atmospheric Administration. For purposes of obtaining a private tidal wetlands permit, a person may also ascertain the location of the MHWL with an "evaluation of the project site conditions" based upon four factors: (i) predicted tide range elevations, (ii) meteorologic conditions, (iii) vegetation and other biological factors at the site including barnacles and algae lines, and (iv) physical indicators at the site such as wrack lines, stain marks on nearby structures, and beach particle sorting.

In this case, the appellant alleged that the appellees, its neighbors, had constructed improvements (a bench, a boardwalk, and a weather station) on an intertidal beach adjacent to appellant's shorefront property. Appellant argued that the improvements were above the MHWL and, thus, on appellant's property. Appellant claimed that its expert had properly located the MHWL using the four-factor method outlined above. The circuit court found that the appellant failed to prove, by a preponderance of the evidence, the location of the MHWL. The court specifically found that the expert did not employ any of the methods discussed in COMAR, that the expert had not even been hired to locate the MHWL, that he conducted his survey without sufficient precision, and that he made various statements that undermined his credibility.

The Appellate Court of Maryland held that the circuit court was not clearly erroneous when it found that appellant's expert failed to prove, by a preponderance of the evidence, that the improvements at issue were above the MHWL. The expert's testimony was deficient in locating the MHWL by any of methods that COMAR may permit.

**RIPARIAN RIGHTS—EJECTMENT AND TRESPASS ACTION**

In this case, the appellant alleged that the appellees had interfered with its riparian rights to the intertidal beach adjacent to its property. The appellant sued the appellees under the theories of trespass and ejectment and asked the court to order the appellees to remove improvements that they had built on the beach. The circuit court declined to address appellant's riparian rights arguments because they were not relevant to disposing of the trespass and ejectment claims.

The Appellate Court of Maryland held that the circuit court did not err in declining to address the riparian rights arguments. Riparian landowners hold various rights of use of and access to the water in front of their fast land. Ejectment and trespass, however, are both possessory actions. To sustain a claim of ejectment or trespass, plaintiffs must prove that they have the exclusive right to possess the property at issue. Because riparian rights are access-based and not possessory, appellant's riparian rights did not give it an exclusive right to possess the intertidal beach adjacent to its fast land. The circuit court correctly concluded that appellant's riparian rights of access had no bearing on the possessory claims of trespass and ejectment that appellant had pursued in its complaint.

Circuit Court for Wicomico County
Case No. C-22-CV-18-000501

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 0713

September Term, 2023

_____

MKOS PROPERTIES LLC

v.

BRADLEY W. JOHNSON, ET AL.

_____

Arthur,
Reed,
Zarnoch, Robert A.
  (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Arthur, J.
_____

Filed: January 31, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

This case involves a dispute between neighboring owners of waterfront property. The plaintiff contended that its neighbors placed three structures on a beach that the plaintiff claims to own. The defendants contend that the structures are located below the mean high water line ("MHWL"), which, in this case, would mean that the structures are located on property owned by the State of Maryland, not by the plaintiff.

The plaintiff's expert acknowledged that one of the structures was not located on the plaintiff's property. The circuit court found that the plaintiff had failed to prove that the other structures were located on its property.

The plaintiff appealed. We affirm.

### FACTUAL AND PROCEDURAL HISTORY

In 2010, Bradley and Nancy Johnson purchased two plots of land on the shore of Wetipquin Creek in Quantico, Maryland. Between 2012 and 2014, the Johnsons constructed a boardwalk that allows the public to reach Wetipquin Creek and an intertidal beach, which is at least partially submerged at high tide. A portion of the boardwalk—the portion running over the intertidal beach—is not on the Johnsons' property.

In early 2017, the Johnsons installed a bench and a weather station on that beach to facilitate the use of a sailboat that they had recently purchased. Mr. Johnson placed the bench and weather station below what he estimated to be the MHWL.

Around the same time that the Johnsons installed the bench and the weather station, MKOS Properties LLC ("MKOS") began the process of purchasing a 55-acre plot of land adjacent to the Johnson parcels.

On March 6, 2017, the Johnsons sent a letter to the owner of the adjacent plot. The Johnsons stated that they and other local residents "have used" an intertidal beach adjacent to the parcel "for more than 20 years and have constructed benches and installed walkways to provide access to the beach." The Johnsons informed the owner that the beach was generally accessible only "at low tide" and that it "is actually not a part of [the owner's] property," but is instead "owned by the State of Maryland." The Johnsons suggested that they meet with the owner or with MKOS so that the Johnsons could "answer any questions" about the walkway and the bench.

The parties never held such a meeting. Instead, MKOS purchased the parcel in April of 2017 and demanded that the Johnsons remove the boardwalk, the bench, and the weather station from what MKOS said was its property. MKOS posted "no trespassing" signs on the beach and "asserted [a] possessory interest" over the land on which the boardwalk, bench, and weather station are situated.

The Johnsons did not remove the improvements, and MKOS filed a complaint in the Circuit Court for Wicomico County on November 5, 2018. The complaint alleged one count of "trespass/ejectment" and requested, among other things, "an [o]rder ejecting [the Johnsons] from the MKOS Parcel" and "an [o]rder finding that [the Johnsons had] trespassed on the MKOS Parcel." MKOS alleged that the improvements interfered with its property rights, its riparian rights, or both.

On January 23, 2019, the Johnsons moved to dismiss MKOS's complaint. On that same day, the Johnsons filed a counterclaim for a declaration that they may use what they called the "Beach Area" at low tide for recreational purposes. Simultaneously with the

2

filing of their counterclaim, the Johnsons moved for summary judgment. On February 28, 2019, MKOS moved for summary judgment as well. The circuit court heard the parties' cross-motions on April 26, 2019.

On July 26, 2019, the circuit court issued a declaratory judgment and an order granting the Johnsons' motion for summary judgment. The declaratory judgment stated that the Johnsons had "acquired an easement to maintain the [bench, boardwalk, and weather station] and make recreational use of the Beach Area, either by virtue of adverse possession or by virtue of an implied public dedication."

MKOS appealed to this Court. On November 23, 2020, this Court held that the declaratory judgment "lack[ed] the clarity and specificity required under [section 3-409 of the Courts and Judicial Proceedings Article] in order to terminate the controversy between the parties." *MKOS Properties, LLC v. Johnson*, No. 1215, Sept. Term 2019, 2020 WL 6869893, at *5 (Md. Ct. Spec. App. Nov. 23, 2020) (unreported).

In reaching that decision, we observed that the circuit court had "fail[ed] to define whether one or more of the fixtures [are] located on the MKOS parcel." *Id.* at *7. We referred specifically to the circuit court's finding that "the Beach Area and the three fixtures are underwater except at low tide and, consequently, they are below the [MHWL]." *Id.*

We noted that the location of the MHWL is defined by common law and regulation. *Id.* We cited COMAR 26.24.01.02(32) for the definition of the MHWL: "the line where the land meets the water surface at the elevation of mean high water." *MKOS Properties, LLC v. Johnson*, 2020 WL 6869893, at *7. We also cited COMAR

3

26.24.01.02(31) for the definition of "mean high water": "the average of all high water levels observed over the national tidal datum epoch." *MKOS Properties, LLC v. Johnson*, 2020 WL 6869893, at *7.[1]  Finally, we cited COMAR 26.24.01.02(35) for the definition of "national tidal datum epoch": "the specific 19-year period adopted by the National Ocean Service as the official time segment over which tidal observations are taken and reduced to obtain mean values for tidal datums." *MKOS Properties, LLC v. Johnson*, 2020 WL 6869893, at *7.  We concluded that the court had neither "defined nor established" the location of the MHWL.  *Id.*

Establishing the location of the MHWL was crucial to the circuit court's analysis because the mean high water line ordinarily "'marks the division between state and private ownership of the shoreline.'"[2]  *Id.* (quoting *Clickner v. Magothy River Ass'n Inc.*, 424 Md. 253, 267-68 (2012)).  The circuit court could not determine whether the fixtures

---

[1] In the fields of surveying and civil engineering, "datum" means "any level surface, line, or point used as a reference in measuring elevations."  WEBSTER'S ENCYCLOPEDIC UNABRIDGED DICTIONARY OF THE ENGLISH LANGUAGE 368 (1989).  "Datums" is the plural of "datum."

[2] The MHWL does not mark the division between State and private ownership of the shoreline in cases where the State granted title to land beneath navigable waters.  In Maryland's early history, the State, as successor-in-interest to the Proprietors of Maryland, had the power to "patent[] to individuals, subject to the public rights of navigation and fishery, fee[]simple title to land under water."  *Mayor and City Council of Baltimore v. Canton Co. of Baltimore*, 186 Md. 618, 630-31 (1946).  In 1862, the State lost that power when the General Assembly passed an act declaring that "[n]o patent hereafter issued out of the Land Office shall impair or affect the rights of riparian proprietors, . . . and no patent shall hereafter issue for land covered by navigable waters."  1862 Md. Laws 137.  Some Maryland shoreline, then, may be privately owned—even though it is below the MHWL—if it was included in a patent before the passage of the Acts of 1862.

were located on MKOS's property unless it found whether the fixtures were located above or below the MHWL.

We vacated the order and declaratory judgment and remanded the case to the circuit court for proceedings consistent with the appellate opinion. *Id.* at *8. One task on remand was to define and establish the MHWL.

The parties appeared again in the circuit court on December 20, 2022, for a bench trial. The Johnsons had, at that point, dismissed the counterclaim for declaratory judgment with prejudice, leaving the court to decide only the trespass and ejectment claims brought by MKOS.

At trial, MKOS called Douglas Jones as an expert in the field of land surveying. Mr. Jones testified that he performed a boundary survey of the MKOS parcel and found that the boardwalk and weather station were "on the MKOS Parcel." On the other hand, Mr. Jones testified that the bench was "within the intertidal zone immediately adjacent to the MKOS Parcel"—i.e., that the bench was not on MKOS's property. The Johnsons argued that Mr. Jones "did not definitively locate the MHWL as directed by" this Court.

The circuit court denied MKOS's request for relief in a written opinion on May 10, 2023. The court found that, for purposes of determining the location of the MHWL, Mr. Jones's testimony and the survey completed by him and his crew were not "credible."

In support of its finding, the court reasoned, first, that MKOS had not hired Mr. Jones to find the MHWL. In fact, when MKOS engaged Mr. Jones in 2018, MKOS had told him that locating what it called the "wet boundary" of the MKOS property was

5

irrelevant to its interests and a waste of money. The court found that Mr. Jones conducted the boundary survey in a way that "comports with" MKOS's "stated lack of interest" in identifying the MHWL: he collected elevation data using a GPS-tracked surveyor's rod and noted the location of the "wrack line"—the place where debris is deposited at high tide.[3] According to the court, Mr. Jones's method of locating the MHWL "[did] not comport with any of the permissible methods outlined in COMAR, much less the one provided by" this Court.

The court also found that, even if Mr. Jones had conformed his survey to the methods identified in COMAR, he conducted his survey "without sufficient precision." He used a surveyor's rod with a sharpened tip rather than a "'frog-footed attachment" that would be "less prone to sinking in soft, waterlogged soil." In addition, he believed that he had calculated the elevation "from atop the boardwalk itself and not the ground below." "This lack of precision," the court found, had "led to clear discrepancies in the data" that Mr. Jones presented to the court. The court concluded that it could not rely upon the calculation of the MHWL in Mr. Jones's boundary survey.

The court added that "throughout his testimony" Mr. Jones had made "multiple statements" that "undermined his credibility." He testified that a dark, bolded line on the

---

[3] Throughout the record, "rack" and "wrack" are used interchangeably to refer to the line of debris that accumulates on a beach at high tide. COMAR uses the word "rack," but the overwhelming majority of publications and courts in other jurisdictions use "wrack." *See, e.g.*, *Nat'l Audubon Soc'y, Inc. v. U.S. Fish & Wildlife Serv.*, 55 F. Supp. 3d 316, 333 (E.D.N.Y. 2014) ("In addition, beach scraping may. . . delay the formation of an upper beach wrack line[]") (internal quotation marks omitted). We will use "wrack" for the remainder of this opinion.

6

boundary survey defined both the property line and the MHWL even though the line was not so labeled and even though it is standard practice to employ such a label in the surveying profession. He also testified that the NOAA[4] station at Bishops Head, Maryland, was too far away to be a reliable reference, said that he preferred to use a closer station, and identified a station in Tyaskin Park, Maryland, "immediately adjacent to the parties' properties," as a closer station. The court found, however, that the NOAA website does not identify any such station and that Mr. Jones, in any event, did not use any information from that alleged station.

The court also found that Mr. Jones contradicted himself: in discussing one of the documents prepared by his crew, he testified that the letters "HWL" meant "MHWL" even though he had previously stated that the calculation of "HWL" "needed 'final refinement.'" Mr. Jones asserted that the MHWL can appear at multiple elevations, which, the court observed, "contradict[s] the very concept of a 'mean' measurement." Contrary to the directives of this Court, Mr. Jones also asserted that the "correlation of local elevations to the NOAA tidal datum is not required to determine the location of the MHWL." "The cumulative effect" of these statements led the court to "seriously doubt the credibility of Mr. Jones's testimony."

Because of Mr. Jones's failure to "comply with the guidance provided by the Appellate Court of Maryland," the court found that MKOS "failed to prove, by [a] preponderance of the evidence, that the boardwalk and weather station built by [the

---

[4] "NOAA" means the National Oceanic and Atmospheric Administration.

7

Johnsons] on the Beach Area trespass on [MKOS's] property." Because of Mr. Jones's concession, the court also found that the bench did not trespass on MKOS's property. Turning briefly to the issue of riparian rights, the court found that MKOS's allegations were "not relevant to dispensing with [MKOS's] trespass claim" and declined to address them.

MKOS noted a timely appeal.

## QUESTIONS PRESENTED

MKOS presented five questions, which we have consolidated and reworded in the interest of concision:

1. Did the circuit court err by ruling that MKOS failed to prove that the improvements at issue were on its property?

2. Did the circuit court err by declining to address MKOS's arguments regarding its riparian rights?[5]

---

[5] MKOS framed the questions as follows:

(1) Whether the Circuit Court erred by refusing to address material legal issues brought before it, namely the riparian rights of MKOS and the infringement of those rights by the Johnsons?

(2) Whether the law provides MKOS with actionable vested riparian rights that the Johnsons have infringed upon?

(3) Whether the Circuit Court erred as a matter of law by determining that the only legal permissible method to locate the seaward boundary of a waterfront property is by correlation of elevation measurements to a NOAA tidal datum epoch?

(4) Whether the Circuit Court committed clear error when it failed to find that the Johnsons' unpermitted boardwalk and unpermitted weather station lie above the MHWL?

For the reasons that follow, we shall affirm the judgment of the circuit court.

**STANDARD OF REVIEW**

"When reviewing a bench trial decision, we will not set aside a trial court's judgment on the evidence unless it is clearly erroneous, giving 'due regard to the opportunity of the trial court to judge the credibility of the witnesses.'" *Braude v. Robb*, 255 Md. App. 383, 396 (2022) (quoting Md. Rule 8-131(c)). When reviewing for clear error, "we must consider the evidence in the light most favorable to the prevailing party and decide not whether the trial judge's conclusions of fact were correct, but only whether they were supported by a preponderance of the evidence." *Royal Investment Group, LLC v. Wang*, 183 Md. App. 406, 430 (2008) (citations omitted).

"When the trial court's decision involves an interpretation and application of Maryland statutory and case law," however, "[this] Court must determine whether the trial court's conclusions are legally correct." *Estate of Zimmerman v. Blatter*, 458 Md. 698, 717-18 (2018) (quoting *Bottini v. Dep't of Fin.*, 450 Md. 177, 187 (2016)). "Where a case involves both issues of fact and questions of law, this Court will apply the appropriate standard to each issue." *Id.* at 718.

---

(5) Is it a reversible error when the trial court's stated basis for discrediting an expert witness's testimony is based on the Court's own error of law and misapprehension of facts?

9

## I. The Mean High Water Line

MKOS's complaint alleged that the Johnsons had trespassed on its property. "[T]respass is a tort involving 'an intentional or negligent intrusion upon or to the possessory interest in property of another.'" *Royal Investment Group, LLC v. Wang*, 183 Md. App. at 444 (quoting *Mitchell v. Baltimore Sun Co.*, 164 Md. App. 497, 508 (2005) (further citation omitted)). "In order to prevail on a cause of action for trespass, the plaintiff must establish: (1) an interference with a possessory interest in [the plaintiff's] property; (2) through the defendant's physical act or force against that property; (3) which was executed without [the plaintiff's] consent." *Id.* at 445 (citations omitted).

MKOS's complaint also asserted a claim for ejectment. Ejectment is an "action brought by one claiming a right to possess real property against another in possession." BRYAN A. GARNER, A DICTIONARY OF MODERN LEGAL USAGE 209 (1987).

At issue in this case is whether the Johnsons installed the boardwalk, bench, and weather station on property that MKOS possesses such that MKOS can sustain a trespass or an ejectment action. As stated previously, the MHWL typically "marks the division between state and private ownership of the shoreline." *Clickner v. Magothy River Ass'n Inc.*, 424 Md. at 267-68. This Court remanded the case to the circuit court so that it could determine whether the improvements were above or below the MHWL.

In its opinion remanding the case to the circuit court, this Court laid out COMAR's definition of the MHWL:

The mean high water line is defined in Title 26 of the Code of Maryland Regulations as "the line where the land meets the water surface at the elevation of mean high water." COMAR 26.24.01.02(32). "Mean high water," in turn, is defined as "the average of all the high water levels observed over the national tidal datum epoch." COMAR 26.24.01.02(31). "National tidal datum epoch," in turn, is defined as "the specific 19-year period adopted by the National Ocean Service as the official time segment over which tidal observations are taken and reduced to obtain mean values for tidal datums." COMAR 26.24.01.02(35).

*MKOS Properties, LLC v. Johnson*, 2020 WL 6869893, at *7.

In its opinion, the circuit court discussed Mr. Jones's methodology for locating the MHWL. The court found that "Mr. Jones testified that he and his crew collected elevation data from a GPS-tracked surveyor's 'rod' and noted where the 'wrack line' (a location along the shore where debris is deposited at high tide) was along the MKOS Parcel boundary." The court found that this method of locating the MHWL did not comport with the method that this Court had identified—the method identified in COMAR 26.24.01.02(35). That finding seems unassailable—identifying the "wrack line" is not the same as identifying "the average of all the high water levels observed over the national tidal datum epoch." COMAR 26.24.01.02(31).

MKOS claims that the circuit court erred by finding that MKOS was required to calculate the MHWL "by taking elevation measurements on-site at the MKOS Parcel and correlating them to the nearest [NOAA] tidal datum epoch." MKOS argues that the circuit court's method of determining the MHWL is merely one of three "expressly permitted methods of locating mean high water under the COMAR standards[.]"

To support its argument that Mr. Jones was permitted to calculate the MHWL in other ways, MKOS cites COMAR 26.24.02.02(E)(2), which delineates the requirements

11

to receive a private tidal wetlands permit. MKOS argues, specifically, that Mr. Jones could locate the MHWL by "using a comparison of observational records with control tide station data as published by the U.S. Department of Commerce, National Oceanic and Atmospheric Administration" (COMAR 26.24.02.02(E)(2)(b)) or by evaluating "project site conditions based upon the following parameters: (i) Predicted tide range elevations, (ii) Meteorologic conditions, (iii) Vegetation and other biological factors at the site including barnacles and algae lines, *and* (iv) Physical indicators at the site such as [wrack] lines, stain marks on nearby structures, and beach particle sorting." COMAR 26.24.02.02(E)(2)(c) (emphasis added).

MKOS's argument fails for two reasons. First, the circuit court found that, even if MKOS's preferred way of establishing the MHWL was a permissible one, Mr. Jones's methodology "d[id] not satisfy the requirements under [COMAR chapter 26.24.02]." Second, the circuit court found that, even if Mr. Jones's methodology "conform[ed] to regulatory requirements," he still made his MHWL calculations without "sufficient precision."

On the issue of whether Mr. Jones employed any of the other methods discussed in COMAR, the circuit court noted that Mr. Jones did not testify about having observed or considered any of the other factors delineated in COMAR 26.24.02.02(E)(2)(c). Based on Mr. Jones's testimony, the circuit court found that Mr. Jones located the wrack line alone, which is not a permissible method.

MKOS claims that Mr. Jones "completed his boundary survey of the MKOS Property using the methodologies permitted under COMAR," but provides no detailed

12

factual support for its assertion.  MKOS says only that, at trial, its counsel asked Mr.

Jones whether he "appl[ied] methodologies permitted under COMAR regulations that

[were] just discussed" and that Mr. Jones replied, "Yes, sir."  MKOS's counsel, however,

did not question Mr. Jones any further on the subject.  In the total absence of any

substantive questioning about predicted tide range elevations, meteorologic conditions, or

vegetation and other biological factors at the site, the circuit court was not required to

accept Mr. Jones's conclusory response as dispositive on whether he complied with

COMAR 26.24.02.02(E)(2)(c).

Moreover, on cross-examination, Mr. Jones's answer to counsel for the Johnsons

contradicted his two-word answer to counsel for MKOS:

> [COUNSEL]:  So, again, [] the way you determine the mean high water
> line in this case is you walk the wrack line and you shoot elevations?
>
> [MR. JONES]:  Most definitely.
>
> [COUNSEL]:  And that's it?
>
> [MR. JONES]:  Yes.

Mr. Jones made no subsequent comments to indicate that he did anything other

than "walk the wrack line" to comply with MKOS's preferred methodology.  Thus, even

assuming that MKOS is correct that the MHWL can be found in more than one way, the

circuit court did not commit clear error in finding that MKOS and Mr. Jones failed to

prove that they found the MHWL in any one of those ways.

Second, and in any event, the circuit court found that Mr. Jones's calculations

were insufficiently precise even if he had employed a permissible method.  This is so,

13

according to the court, because Mr. Jones testified that he took the "elevation shots" from which he formed his opinions "atop the boardwalk itself and not the ground below." Additionally, Mr. Jones testified that he used a type of surveying rod that is not conducive to establishing the MHWL because he "was not [conducting his survey] for elevation work at the time[.]"  As a result of Mr. Jones's "lack of precision," the court found that he presented contradictory data that made his calculation of the MHWL unreliable.  MKOS has done nothing to show that this finding was clearly erroneous.

MKOS claims that the circuit court committed clear error by failing to find that the boardwalk and weather station lie above the MHWL based chiefly on Mr. Jones's testimony.  The court, however, was not required to believe Mr. Jones.  Ultimately, the court did not find Mr. Jones's testimony or his survey "credible for making this determination."

The court gave a detailed explanation of why it did not find Mr. Jones and his survey to be credible.  For example, Mr. Jones said that he preferred to use a specific NOAA station for tidal datums, but NOAA says that that station does not exist, and Mr. Jones did not use it in any event.  In addition, Mr. Jones made absurd statements, such as the statement that the MHWL can appear at multiple locations, which, the court observed, is inconsistent with the concept of a "mean."

It is almost impossible for a court to be clearly erroneous when it is simply not persuaded of something.  *See, e.g.*, *Bricker v. Warch*, 152 Md. App. 119, 137 (2003).  Here, the circuit court had ample grounds not to be persuaded by Mr. Jones's opinions.  Therefore, giving "due regard to the opportunity of the trial court to judge the credibility

14

of the witnesses[,]" (Md. Rule 8-131(c)), we do not find cause to set aside the circuit court's judgment.[6]

## II. Riparian Rights

MKOS next argues that, even if the improvements are below the MHWL, it is still entitled to judgment on its trespass and ejectment claim because it has riparian rights in the water abutting its land. MKOS is correct that it has riparian rights in water abutting its land. It is incorrect that its bundle of rights entitles it to judgment in its favor on a trespass and ejectment claim.

---

[6] None of the parties raised the issue of whether the State is a necessary party in a trespass or ejectment action in which the defendants assert that an offending structure is not located on the plaintiff's property, but on property owned by the State. Maryland Rule 2-211(a) identifies necessary parties—i.e., parties whose joinder is required:

Except as otherwise provided by law, a person who is subject to service of process shall be joined as a party in the action if in the person's absence

(1) complete relief cannot be accorded among those already parties, or

(2) disposition of the action may impair or impede the person's ability to protect a claimed interest relating to the subject of the action or may leave persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations by reason of the person's claimed interest.

In our judgment, the State is not a necessary party. The court could accord complete relief in this trespass and ejectment action without joining the State. The State is not in privity with MKOS or the Johnsons, so the State cannot be bound by res judicata or collateral estoppel. Finally, the disposition of the action would not leave MKOS or the Johnsons subject to a substantial risk of incurring multiple or inconsistent obligations by reason of the State's potential interest, because the only issues raised were whether the Johnsons had trespassed onto MKOS's property and whether the Johnsons should be ejected.

A riparian landowner is one who "'owns land bordering upon, bounded by, fronting upon, abutting or adjacent and contiguous to and in contact with a body of water, such as a river, bay, or running stream.'" *Conrad/Dommel, LLC v. W. Dev. Co.*, 149 Md. App. 239, 268 (2003) (quoting *Kirby v. Hook,* 347 Md. 380, 389 (1997)) (further citation omitted). "The term 'riparian rights' indicates a bundle of rights that turn on the physical relationship of a body of water to the land abutting it." *Id.* (quoting 1 WATERS AND WATER RIGHTS, § 6.01(a) at 6-3, 6-4 (Robert E. Beck, ed. 1991, 2001 Repl. Vol.)). The bundle of rights afforded to a riparian landowner includes at least the following rights:

(i)     of access to the water;

(ii)    to build a wharf or pier into the water;

(iii)   to use the water without transforming it;

(iv)    to consume the water;

(v)     to accretions (alluvium); and

(vi)    to own the subsoil of nonnavigable streams and other 'private' waters.

*Conrad/Dommel, LLC v. W. Dev. Co.*, 149 Md. App. at 268-69.

"[T]he fundamental riparian right—on which all others depend, and which often constitutes the principal value of the land—[is] access to the water." *Steinem v. Romney*, 233 Md. 16, 23 (1963) (emphasis omitted); *see also White v. Pines Cmty. Improvement Ass'n, Inc.*, 403 Md. 13, 18 (2008) ("the real fight, as it usually is in riparian rights issues, is over access to water and who has it"); *People's Counsel for Baltimore Cnty. v. Md. Marine Mfg. Co., Inc.*, 316 Md. 491, 501-02 (1989) ("[at common law], the sole purpose

16

of [riparian rights] was to assure to the riparian owner that [the owner] would never be cut off from [the owner's] access to water"); *Rayne v. Coulbourne*, 65 Md. App. 351, 365 (1985) ("[o]ne of the greatest assets of being riparian is the right of access to navigable water").

MKOS contends that, by virtue of its ownership of land on Wetipquin Creek, it has riparian rights such that a court can eject the Johnsons from property over which MKOS "asserts possessory rights." MKOS claims the circuit court "materially erred, as a matter of law" when it declined to address MKOS's riparian rights arguments. MKOS is incorrect.

MKOS's complaint contained one count: "Trespass/Ejectment." MKOS demanded a remedy in the form of an order "ejecting the [Johnsons] from the MKOS Parcel" and an order directing the Johnsons to pay MKOS "any and all costs and expenses for the restoration of the MKOS Parcel" to its previous state.

Ejectment, in its nascency, was a common law action "brought by one claiming a right to possess real property against another in possession." BRYAN A. GARNER, A DICTIONARY OF MODERN LEGAL USAGE 209 (1987). Ejectment began as a "a very narrow remedy, designed to give the lessee of property a cause of action against anyone who ejected [the lessee], including [the lessee's] lessor." *Pernell v. Southall Realty*, 416 U.S. 363, 373 (1974). Over time, common-law ejectment evolved and "became the principal means employed by landlords to evict tenants for overstaying the terms of their leases, nonpayment of rent, or other breach of lease covenants." *Id.* Courts in this State have "repeatedly recognized" that, to succeed on an ejectment action under the common

17

law, a plaintiff "'must be clothed with both the legal title, and the immediate right of possession.'" *Velicky v. Copycat Building LLC*, 476 Md. 435, 496 (2021) (Watts, J., dissenting) (quoting *Lannay's Lessee v. Wilson*, 30 Md. 536, 546 (1869)). In other words, when a party brings a common-law ejectment claim, the party is "seeking repossession of its possessory interest." *Velicky v. Copycat Building LLC*, 476 Md. at 479.

Maryland courts have distinguished between ejectment actions and actions to quiet title. In quiet title actions, "[i]t is enough that the interest asserted by the plaintiff in possession of land is superior to that of those who are [defendants.]" *Porter v. Schaffer*, 126 Md. App. 237, 272 (1999) (citations omitted). In ejectment actions, on the other hand, where one is "seeking to recover possession," the plaintiff is "bound to show a perfect title as against all the world[.]" *Id.* (quoting Logan D. Fitch, 2 ABSTRACTS AND TITLES TO REAL PROPERTY § 517 (1954)).

Common law ejectment is a pure possessory action. Consequently, MKOS has sued the Johnsons under a wrong theory. Riparian rights are not possessory rights; they are a bundle of rights granting "access 'to the water in front of [a property owner's] fast land.'" *Becker v. Litty*, 318 Md. 76, 83 (1989) (quoting *United States v. 222.0 Acres of Land*, 306 F. Supp. 138, 151 (D. Md. 1969)). "[T]he sole purpose of the rule" granting riparian owners rights to land accumulated by accretion or reliction, in fact, was to "assure to the riparian owner that [the owner] would never be cut off from . . . access to water." *Bd. of Public Works v. Larmar Corp.*, 262 Md. 24, 36 (1971). Riparian rights relate almost exclusively to use and access. MKOS asked the circuit court, then, to be

restored to possession of water it may have the right to use and access, but does not have the right to possess. MKOS cannot show "perfect title as against all the world" to waters that it does not have the exclusive right to possess. *Porter v. Schaffer*, 126 Md. App. at 272.

Similar reasoning applies to the trespass portion of MKOS's complaint. "A trespass is a tort involving 'an intentional or negligent intrusion upon or to the possessory interest in property of another.'" *Mitchell v. Baltimore Sun Co.*, 164 Md. App. at 508 (quoting *Ford v. Baltimore City Sheriff's Office*, 149 Md. App. 107, 129 (2002)). Because riparian rights are non-possessory, MKOS cannot prove that the Johnsons negligently intruded "upon or to" its "possessory interest." *Id.* Simply put, the remedy for a violation of a riparian owner's riparian rights is not to restore that owner to possession of the water in front of the owner's fast land. The circuit court was correct that MKOS's riparian rights arguments were "not relevant to dispensing with [its] trespass claim[,]"and was, by extension, correct to decline to address them.

Finally, MKOS argues that the circuit court "was required" under Title 16 of the Environment Article of the Maryland Code (1996, 2014 Repl. Vol.) "to take action to enjoin" the Johnsons' alleged violations of that article. It cites section 16-307(a)(1) of the Environment Article, which provides that "[a]ny person proposing to conduct on any wetland an activity not authorized by" certain COMAR regulations "shall apply for a permit[.]" Thus, MKOS argues that it should be allowed "a private cause of action to prohibit unpermitted improvements in the intertidal lands adjacent to [its] riparian property[.]"

19

Once again, however, MKOS has sued only for trespass and ejectment. The remedy for any alleged violation of a permitting requirement of the Maryland Code is not to eject the violator from riparian waters and restore a riparian landowner to possession of the waters. The circuit court was correct to decline to address MKOS's arguments to the contrary.[7]

> **JUDGMENT OF THE CIRCUIT COURT FOR WICOMICO COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

[7] Because MKOS proceeded solely on theories of trespass and ejectment, we need not consider MKOS's contention that a riparian owner has a private right of action under COMAR to obtain an injunction requiring the removal of structures, like the boardwalk and weather station, that were erected in the intertidal area without a required permit. We do not countenance the unpermitted installation of structures on State property, in the navigable waterways of the State, or in areas regulated by the State, such as the Chesapeake Bay Critical Area.